HOUSTON, EAST & WEST TEXAS RAILWAY COMPANY v. F. CAMPBELL.

No. 582.—Decided March 14, 1898.

1.  Railway—Refusal to Furnish Cars—Penalty.

Rev. Stats., arts. 4497 to 4502, providing a penalty for failure to furnish cars on demand and deposit with the  agent of  the company of one-fourth of the freight charge, are to be strictly construed, and are applicable only to cases where an agent is maintained at or for the point of the proposed shipment.   (Pp. 556 to 558.)

2.  Same—Station or Switch.

The proviso in art. 4498, that the  place designated shall be at some station or switch on the railroad, was not intended to make every switch  a  receiving and discharging station, and  does not  necessitate a  construction of the statute different from that given above.   Nor does art. 4532, which requires cars to be furnished at switches constructed for the accommodation of freighters,—it being an independent statute not amendatory of nor affecting the construction of the Revised Statutes then in force.   (Pp. 558, 559.)

3.  Railway—Receiver—Contract—Liability of Purchaser.

The receiver of a railway can not, without an order of the court, make a contract binding the property in his hands.   A contract by him to furnish certain transportation to a shipper, is of force only during the receivership, and does not bind the company succeeding to the control of the property.   (Pp. 559, 560.)

4.  Refusal to Furnish Cars—Tender for Transportion.

Upon the refusal of a railway company to furnish cars, on demand of a shipper, for transportation of  his property, as required  by Rev. Stats., arts. 4494, 4496, the latter was not bound to prepare and tender the property for transportation in order to entitle him to recover damages for such breach of duty.   (Pp. 560, 561.)

5.  Evidence—Immaterial Error.

The exclusion of a written contract between a  shipper and consignee, offered in evidence to show damages occasioned to the former by a railway in failing to furnish transportation, was immaterial where the contract was established by other evidence.   (P. 561.)

**6. Failure to Transport—Knowledge of Shipper's Contract.**

Knowledge of such contract by the carrier was not necessary to the shipper's right of recovery, and there was no error in excluding evidence of notice thereof to the carrier. (P. 561.)

**7. Evidence—Declarations of Conductor.**

To show that a railway company had determined not to furnish cars for plaintiff to ship to a certain consignee, declarations of its conductor, while setting cars in for loading, that if loaded for such consignee plaintiff would not get another car, should have been admitted. (P. 561.)

**8. Evidence—Cause of Animosity.**

The existence of animosity between plaintiff and defendant may be shown in support of the claim of the former that a carrier wrongfully discriminated against him; but evidence of the cause of the animosity was immaterial and properly excluded. (P. 561.)

**9. Failure to Transport—Consignee's Refusal to Receive.**

In a suit by a shipper for failure to furnish transportation for property he had contracted to deliver to a third party, the carrier can not show notice from such third party that he would not receive it. The plaintiff had the right to ship to him and hold him to his contract. (P. 561.)

**10. Same—Consignee's Delay in Unloading.**

In such case it was not competent for the carrier to prove delay by the same consignee in unloading previous shipments, its remedy being not against the shipper, but against the consignee for demurrage. (P. 561.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from Polk County.

*Adams & Campbell*, for defendant in error (in support of cross-assignments).—The trial court erred in sustaining defendant's eighth exception to plaintiff's petition, because plaintiff shows, by his petition, that he had a good, valid and binding contract, a thing of value, concerning which plaintiff alleges that defendant had been fully advised of all its terms, conditions and requirements; that defendant had induced plaintiff to enter said contract, and had agreed with plaintiff to furnish him sufficient transportation to enable him to carry out said contract. Plaintiff pleads that he was amply able, willing and ready to carry out said contract to deliver said wood, and would have done so, and complied with the terms of his contract to the letter, but for the willful refusal, on the part of defendants, to furnish transportation, and the determined efforts on the part of defendants to break this plaintiff up in business, which plaintiff alleges defendants did do, and in so doing destroyed this valuable contract of plaintiff's. The issue on facts, as pleaded by plaintiff, should have been submitted to the jury. Alamo Mills Co. v. Hercules Iron Works, 1 Texas Civ. App., 691; Railway v. Smith, 63 Texas, 322; Maloney v. Roberts, 32 Texas, 140; 3 Story's Com., 123.

The court erred in sustaining appellant's exception No. 15, because appellee pleaded that the contract, though made with the receiver, was fully ratified and confirmed by the present management of said railway company. Sayles' Civ. Stats., art. 4239; Railway v. Morris, 4 S. W. Rep., 156.

The trial court erred in not permitting plaintiff to introduce in evidence a certain bond entered into between plaintiff and Theo. Keller, for the faithful performance, each, with his portion of said contract, to deliver and receive and pay for the 10,000 cords of wood. Said bond was offered for all purposes connected with it, and plaintiff pleaded and would have proven that defendant had full knowledge of all the terms and conditions of both the contract and the bond for its faithful performance.

The court erred in sustaining defendant's objection to plaintiff answering the following question: "What knowledge, if any, did H. W. Downey have of the terms, conditions and requirements of the contract entered into between you and Theo. Keller, in which you were to deliver to Keller 10,000 cords of wood; and what knowledge, if any, did he have of your necessity for cars and transportation; and what knowledge, if any, did he have of the bond executed by you and Keller for the faithful performance of that contract?" Plaintiff would, if permitted to answer, have testified, that time and again H. W. Downey had been advised by letters from plaintiff of all the terms, conditions, requirements and exigencies of said contract and the bond for the faithful performance of said contract, and the peculiar condition of said bond, which would have forfeited plaintiff's machinery as liquidated damages to Theo. Keller, if plaintiff had shipped the wood to any other person than Theo. Keller, as plaintiff was often requested by said Downey; and plaintiff fully explained all the terms, conditions and requirements of said bond and contract to Mr. H. W. Downey in person; that during this time Downey was acting as superintendent of the Houston East and West Texas Railway Company. This evidence was offered for the purpose of showing that the defendant company was fully advised during all the time that plaintiff's contract was in force, through all its agents and superintendents, of the terms and conditions of plaintiff's contract with Keller and bond, of plaintiff's necessity for transportation, and to show defendant's willful refusal to furnish plaintiff transportation to carry out said contract.

The court erred in excluding from the evidence of this case the statement made by the conductor who delivered the two cars, with the written billings to plaintiff, which said cars were to be loaded with wood for Wm. D. Cleveland & Co. only. Said evidence was admissible to show that the defendant was able and willing to furnish cars to other people to have wood transported from his mill in, but was not willing to furnish cars to plaintiff to transport wood on his said contract with Keller; and further, to show that plaintiff was, by the action and conduct of defendant, forced to surrender his said contract with Keller, because it was rendered impossible for him to get transportation over defendant's line of road. Plaintiff, if permitted to answer the question, "What did the conductor say to you when he gave you these two way-bills?" would have testified that the conductor who delivered the cars and the written billings did so with this verbal instruction: "I want you to

understand that these two cars are to be loaded with wood for Wm. D. Cleveland & Co. only, and if you load them out to Calhoun, not another God damn car will you get."

The trial court erred in excluding the testimony of the witness, Hill, as to the feeling of animosity existing between the defendant company and Theo. Keller. The object of the testimony was to show that, through the bad feelings between the managers of defendant company and Theo. Keller, it refused to furnish cars in which to ship wood to Keller; that in an effort to hurt Keller it has, regardless of plaintiff's rights, destroyed plaintiff's business. Defendant's witness, Hill, while on the stand, was asked the following question: "What is the cause of the falling out between old man Keller and the Houston East and West Texas Railway Company?" to which the court sustained defendant's objection. Plaintiff expected to show by that witness, if permitted to answer that question, that the difference between Jemison, president of the Houston East and West Texas Railway Company, and Theo. Keller, grew out of a long and hotly contested law suit between the said company and the said Keller, which was about wood used by the said company, and for which it refused to pay him, Keller.

The court erred in permitting the witness, Calhoun, to testify, over the objection of plaintiff, to his having written a letter to the defendant, and the introduction of that letter in evidence, because said letter purported to be a letter to the defendant company, instructing it not to receive any more wood from Campbell switch to be consigned to him, Calhoun. Said evidence was inadmissible and improper, because it was not shown that plaintiff had anything to do with the writing thereof, or in any way bound by any of its terms; and further, because it was not shown that the said Calhoun had anything to do with plaintiff's contract with Keller, nor was the railroad under any obligation to refuse plaintiff transportation upon the letter by Calhoun, or anybody else, and because there is nothing to show that said Calhoun was authorized by plaintiff or Keller to write any such letter; and said letter, together with the testimony of said Calhoun, was altogether irrelevant and impertinent and could serve no legitimate purpose in the trial of this cause, and should have been excluded.

The court erred in permitting the witness Timpson to testify, over plaintiff's objection, to Calhoun permitting cars to remain loaded on the track at their point of destination from two to six days. This testimony ought to have been excluded, because it is no duty of plaintiff to unload cars at their point of destination, nor is it a matter for which he is responsible, and defendant company had its legal right in the matter in the way of demurrage; and further, it should have been excluded, because it is immaterial to any issue in the case.

The court erred in its charge to the jury, in this: "You are further instructed that, under the court's view of the law the undisputed evidence shows that plaintiff is not entitled to recover any amount under the first claim; that is, for failing to furnish him cars to enable him to

carry out the said contract with said Keller, and which failure deprived plaintiff as he alleges, of certain profits he would have made had the cars been furnished him, and for such you can find nothing." Sayles' Civ. Stats., art. 4239, 4227a, sec. 3; Railway v. Smith, 63 Texas, 322; Railway v. Hill, 63 Texas, 387.

*W. H. Wilson* and *Baker, Botts, Baker & Lovett,* for plaintiff in error.—Where a promise is a consideration for a promise, in order for a contract enforcible at law to arise, there must be such absolute mutuality of engagement that each party has the right at once to hold the other to a positive engagement, otherwise there is no contract. Chicago v. Dane, 43 N. Y., 240; Tarbox v. Gotzein, 20 Minn., 139; Bailey v. Austrian, 19 Minn., 535; Railway v. Scott, 72 Texas, 72.

The receiver of a railway company has, incidental to his power, the right to make such contracts as are essential to the running of a railway as a railway; that is, such as are essential to the operation as well as the preservation of the property; but he has not, without the order of the court appointing him, power to make any contracts beyond those of the character mentioned, and where he undertakes to make contracts binding a railroad in his hands to the transportation of freight over, for example, other and independent lines of railroad within a given time, or where he goes beyond his implied authority to transport freight without discrimination against shippers in the order in which it is presented and actually prepared for transportation, and supplements this obligation with the agreement to have his cars running in connection and cooperation with a manufacturing plant, so that the two can be operated together, and the railway as an adjunct to the manufactory, such contracts are unenforcible, unless made under the order of the court creating the receivership. Railway v. Wentworth, 27 S. W. Rep., 683; Railway v. Herndon, 33 S. W. Rep., 377.

The obligation of a railway company in the transportation of freight, under the common law and our statutes, is to transport such freight as is offered, ready and prepared for shipment, in the order in which it is offered, without discrimination against persons or places, and no more. Railway v. Smith, 63 Texas, 326; Railway v. Conatser, 33 S. W. Rep., 1057.

Damages which are purely contingent and of such a character that all that a party can claim he lost was the opportunity of selling something that he would have procured for the purpose of selling same, if the railway had been prompt in furnishing cars to ship the wood which he actually had, are too remote and consequential in their nature to be recovered, in the absence of a special contract made with special reference to the transaction the plaintiff was endeavoring to carry through, and would be too remote, even in such a case, unless he had clearly shown the parties intended to be responsible for damages of that character. Telegraph Co. v. Hall, 124 U. S., 444.

Where a railroad is sold under a judicial sale, the purchaser who re-

organizes and operates same takes the same free from any liabilities of the receiver, except such as are or may be imposed by the decree ordering the sale.   Howe, Receiver, v. St. Clair, 27 S. W. Rep., 800.

GAINES, CHIEF JUSTICE.—The defendant in error Campbell brought this suit against M. G. Howe as receiver of the Houston, East and West Texas Railway Company, against Appleby and Downey as his successors in the receivership, and against the Houston, East and West Texas Railway Company, to recover, under the statute, a penalty for failing to furnish cars upon demand and actual damages resulting from the default.   The petition showing that the receivership had been closed and the receivers discharged, a demurrer by them was sustained and the suit was dismissed as to them.   The case as to the railroad company was tried before a jury, who returned a verdict in favor of the plaintiff for the statutory penalties, but under the instructions of the court found for the company on the second cause of action.   The railroad company appealed, and the plaintiff filed cross-assignment of errors.   The Court of Civil Appeals affirmed the judgment for the penalties, but reversed it in so far as it denied the plaintiff the right to recover actual damages, and remanded the cause for a trial of the issues growing out of that ground of action.

The railroad company has applied for and obtained a writ of error to the judgment of the Court of Civil Appeals, and the whole case is before us for review.

We will first dispose of the judgment for the penalties, and will here state briefly the facts which bear upon that question.   The plaintiff was engaged in the business of manufacturing stove wood to be shipped to Houston.   At his solicitation a switch had been put in on the company's road at a point which was subsequently known as Campbell's Switch. It was not made a regular station, and the company had no agent there. Livingston was the nearest regular station, and there was a station agent at that place.   The statute under which the recovery of the penalties was sought in this case was passed in 1887, and is now embodied in our present Revised Statutes as follows:

"Art. 4497.   When the owner, owners or managers of any freight of any kind shall make application in writing to the superintendent or person in charge of transportation, to any railway company operating a line at the point the cars are desired upon which to ship any freight, it shall be the duty of such railway company to supply the number of cars required at the point indicated in the application within a reasonable time, not to exceed six days from the receipt thereof, and shall furnish such cars to the persons applying therefor in the order applied for, without giving preference to any person.

"Art. 4498.   Said application for cars shall state the number of cars desired, the place at which they are desired and the time they are desired; provided, that the place designated shall be at some station or switch on the railroad.

"Art. 4499. When cars are applied for under the provisions of this chapter, if they are not furnished, the railway company so failing to furnish them shall forfeit to the party or parties so applying for them the sum of twenty-five dollars per day for each car failed to be furnished, to be recovered in any court of competent jurisdiction, and all actual damages that such applicant may sustain.

"Art. 4500. Such applicant shall at the time of applying for such car or cars deposit with the agent of such company one-fourth of the amount of the freight charge for the use of such cars unless the said road shall agree to deliver said cars without such deposit, and said applicant shall within forty-eight hours after such car or cars have been delivered and placed as hereinbefore provided, it shall be the duty of the applicant to fully load the same, and upon failure to do so he shall forfeit and pay to the company the sum of twenty-five dollars for each car not used. And if the said applicant shall not use such cars so ordered by him and shall so notify the said company or its agent, he shall forfeit and pay to the said railroad company in addition to the penalty herein prescribed the actual damages that such company may sustain by the said failure of the applicant to use said cars.

"Art. 4501. When cars have been supplied and loaded it shall be the duty of the railway company to deliver the same to the party or parties to whom they are consigned within a reasonable time, and the party or parties to whom the cars are consigned shall unload the same within forty-eight hours after delivery and notice, or forfeit to the railway company the sum of twenty-five dollars per day for each car so left unloaded, to be recovered in any court of competent jurisdiction.

"Art. 4502. It shall be necessary for the party or parties bringing suit against any railroad company under the provisions of this law to show by evidence that he or they had on hand at the time any demand for cars was made the amount of lumber, cotton, wool, hides or other freight necessary to load the cars so ordered; provided, that the provisions of this law shall not apply in cases of strikes or other public calamity."

The statute imposes a heavy penalty, and it is an elementary rule, that such statutes must be strictly construed. This does not imply that the courts are authorized to refuse to give effect to the intention of the Legislature, but it proceeds upon the theory that it is not reasonable to presume it is their intention to impose a punishment, except in so far as that purpose is clearly manifested by the language employed in the statute. It results as a corollary from this rule, that the penalty will not be awarded in a case which does not come strictly within the terms of the statute. Such is the established canon of construction in this court. Schloss v. Railway Co., 85 Texas, 601, and cases there cited.

Does the present case come within the terms of the statute? As a condition precedent to the recovery, article 4500 provides that "such applicant shall at the time of applying for such car, or cars, deposit with

the agent of such company one-fourth of the amount of such freight charges for the use of such cars," etc.   The words "the agent" do not mean any agent.   They clearly imply that a particular agent is meant; and the only reasonable construction is, that it is the agent at or for the point of the proposed shipment, with whom the deposit was to be made. We cannot interpret the terms as meaning the nearest agent (when the company has no agent at or for the point) without importing into the language words which are neither necessarily nor reasonably implied. They mean the agent at or for the station where the cars are desired, and hence the law cannot be applied to a switch, where the company has none.   In a remedial statute the construction might possibly be different, but in a penal act the question is not what the Legislature ought to have provided, nor what they may possibly have intended to provide, but what is the reasonable and clear meaning of the words employed.

But it is insisted that the proviso contained in article 4498 shows that the statute was intended to include a place of the character of that in question in this case.   But we cannot accede to that proposition.   The object of the provision was, in our opinion, merely to exclude what may have been thought a possible construction of the act without such provision.   It was intended to preclude the idea that it was made the duty of a railroad company to furnish cars at a point not established by it for the reception and delivery of freight.   A switch is a mere side track, so constructed as to permit the passage of cars from and to the main track; and it is a matter of common knowledge that railroads have many switches where freight is neither received nor discharged.   So that to give the proviso the construction claimed for it would be to give it an effect contrary to that intended and to empower an applicant to require cars to be furnished at a point not provided for shipping goods, and would make every switch a receiving and discharging station.   Clearly the Legislature did not intend this.   The difficulty in the plaintiff's way is not that the place of shipment of his wood was a switch.   It is that it was not a switch at or for which there was an agent, and therefore does not come within the terms of the statute.

But it is also insisted that article 4522 of the Revised Statutes, also shows that the statute in question should apply in this case.   That article is as follows: "When a company constructs a switch on its road for the accommodation of freighters, they shall be bound to furnish a sufficient number of cars for the transportation of freight therefrom when requested so to do, and in default shall be subject to the same penalties as in other cases of neglect of the like character."   This provision is article 4239, of the Revised Statutes of 1879.   The act under which this proceeding for the penalties is prosecuted was passed in 1887 as an independent statute, and was not passed as an amendment of, or as an addition to the Revised Statutes; and we are of opinion that it was in no manner extended or controlled by the laws then existing.   This case arose before the adoption of the Revised Statutes of 1895, and hence it

is not necessary for us to consider the effect which the incorporation of those laws in that revision as parts of our general statute should have upon their construction.

But even if art. 4522 had been passed subsequent to the act of 1887, we do not see that our ruling should be different. Our construction of the latter act is that it does not apply to either station or switch for which there is no agent, and we think that there is nothing in the article which tends to change that construction.

The statute in question is probably a salutary one; but, in view of the heavy penalties provided, it seems to us that the Legislature may very probably have recognized a distinction between stations and switches where freight was received and discharged for the public at large, and for which agents are provided, and those private stopping places established for the convenience of private individuals. They may have thought that the penalty should not be imposed at a point for which the companies had no agent to superintend the business and to look after the movement of the cars.

The trial court and the Court of Civil Appeals having failed to hold in accordance with the foregoing views, the judgment for the penalty must be reversed.

But we concur in the judgment of the Court of Civil Appeals in so far as it reversed the judgment of the trial court in favor of the defendant upon plaintiff's claim for actual damages. The Houston, East and West Texas Railway Company was placed in the hands of a receiver by the District Court of Harris County. Howe was first appointed receiver, but was succeeded by Downey and Appleby. In the suit a mortgage was foreclosed and the property of the company sold, and became the property of the present Houston, East and West Texas Railway Company, the plaintiff in error. During the receivership of Howe, the plaintiff, Campbell, began a negotiation with one Keller for shipment to him at Houston from Campbell's switch 10,000 cords of stovewood. He testified that he approached Howe and told him of the negotiation and proposed that he should agree to furnish him a certain number of cars to carry out the contract; that Howe declined to promise any number of cars, but told him to go ahead, and he would give him all the transportation wanted. The contract was made with Keller; the plaintiff entered upon its performance on his part, and for a while cars were furnished as demanded. But after the road had been sold and had passed into the hands of the defendant company, the plaintiff made repeated demands for cars that were not acceded to; and there was evidence, at least tending to show, that its agents finally refused to furnish any more cars upon which to ship wood to Keller.

In the view we take of the case we deem it unnecessary to determine whether or not there was evidence tending to show a binding contract with Howe as receiver to furnish the necessary transportation to ship the wood. There is no evidence to show that he obtained any order from the court which appointed him authorizing him to make such a con-

tract. In the case of the International & Great Northern Railroad Company v. Herndon, 33 S. W. Rep., 377, it was held by the Court of Civil Appeals of the First District that without an order of court, the receiver cannot make a contract to bind the property in his hands, and an application for a writ of error in that case was refused by this court. As a general rule, parties dealing with a receiver must be deemed to contract with reference to a termination of the receivership and the contract must be limited accordingly. A receiver is the mere agent of the court for the preservation and management of the property placed in his control, and certainly has no power to make a contract to extend beyond the receivership and to impose a liability upon one who purchases the property under the foreclosure sale made by the court. The receiver is not the agent of the purchaser in any sense, and his acts as receiver are not the subject of ratification by the latter. The purchaser may renew the contract in his own behalf; but we fail to find any evidence of renewal or even of recognition in this case.

But in the absence of a contract it was none the less the duty of the defendant to furnish the plaintiff cars for the transportation of his wood upon his making a timely demand therefor. Rev. Stats., arts. 4494 and 4496. But article 4494 contains this language: "Every such corporation shall start and run their cars for the transportation of passengers and property at regular times, to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer or be offered for transportation at the place of starting;" and it is insisted that the plaintiff did not even have the wood prepared for shipment in this case and that therefore he cannot recover. There was but a small part of the wood ready for shipment at the times the cars were demanded which the defendant failed to furnish. But was the plaintiff bound to provide the wood with which to fulfill his contract with Keller and to offer it at the depot for transportation after the agents of defendant had refused to furnish cars for that purpose? We think not. A similar question arose in the case of the Texas & Pacific Ry. Co. v: Nicholson (61 Texas, 491), and it was there held, that a tender of the property was unnecessary, where the proposed shipper had been informed in advance that it was not required and would not be accepted. That was a case of a breach of contract to ship at a certain time; but the principle is the same. The rule anounced is a general one and applies to all offers and tenders. When the defendant knew that the transportation would not be furnished he was not bound, in order to recover for the wrong done him, to prepare and offer the wood. As argued by his counsel, it was his duty to pursue that course best calculated to lessen the damage resulting from the wrong. We are also of the opinion that the measure of damages was the profits the plaintiff would have made on his contract with Keller; provided, but for the refusal of defendant to furnish the cars, he could and would have carried out that contract. H. & T. C. Ry. Co. v. Hill, 70 Texas, 51. The case cited

was one of a contract to furnish transportation, but in so far as there is a difference in respect to damages between cases of contract and tort, the measure for a breach of a contract is the more restricted. For these reasons we think the trial court erred in its charge upon this branch of the case, and in not giving the special instruction, the refusal of which is complained of in the fourteenth cross-assignment of error.

The other assignments which we deem it proper to notice, relate to the introduction and exclusion of evidence, and we will pass upon them briefly.

We think there was no error in excluding the bond entered into between the plaintiff and Keller by which each bound himself for the faithful performance of the contract on his part. The contract was otherwise indisputably proved. There were no sureties upon the obligation and hence it did not tend to strengthen the plaintiff's case as to Keller's ability to comply with his contract.

We also think the testimony as to Downey's knowledge of the contract with Keller was properly excluded. It is not necessary in a case of this character to show knowledge in order to entitle the plaintiff to recover the damages that may have been inflicted, to the full extent to which they may be reasonably ascertained.

We are of opinion, however, that the court erred in excluding the testimony shown by the plaintiff's ninth bill of exceptions. The conductor, whose language the plaintiff offered to prove, in setting out the cars was acting as agent of the defendant corporation, and hence his declarations are evidence against it. They tended to show, that the company had determined to furnish no more cars for the shipment of wood to Keller, and to give the plaintiff notice of that fact.

But we think there was no error in excluding the testimony of the witness Hill as to the cause of the animosity between Keller and the company. It may have been proper to show the existence of the animosity, in order to strengthen the plaintiff's theory, that the defendant refused to furnish the cars. But the cause of the animosity was immaterial.

The testimony of Calhoun as to his having written a letter to defendant instructing it not to receive any more wood from Campbell's switch consigned to him, was improperly admitted. Calhoun it seems from his testimony was Keller's agent; but the fact that Keller did not desire the wood to be shipped and so notified the defendant did not absolve the defendant from its duty to furnish the transportation. The plaintiff, as long as he complied with the agreement on his part, had the right to ship the wood regardless of Keller's wishes, and to hold him to the performance of his contract.

We also think that the testimony of Timpson was erroneously admitted. It was the plaintiff's right to ship his wood to Keller under his contract, and he was not charged with the duty of seeing that the cars were unloaded at the point of destination. For his failure to unload, the company had its remedy against the consignee.

For the reasons given the judgment of the Court of Civil Appeals, in so far as it affirms the judgment of the District Court, is reversed; but in so far as it reverses that judgment, it is affirmed. The judgment of the District Court as a whole is reversed and the cause remanded for a new trial.

*Reversed and remanded as to entire case.*