Dorrance & Company v. International & Great Northern Railroad Company et al.

Decided January 29, 1909.

**1.—Carrier—Shipment of Cotton—Delay—Damages.**

The damages that may be recovered of a railroad company for delay in the transportation of freight is the difference in the value of the shipment at the time it should have been delivered and the value at the time and place it was actually delivered, together with a sum equal to the legal rate of interest on its value during the time of delay. In addition to this the law allows a recovery of any special damages occasioned by the delay which are the natural or probable result of the breach of the contract of shipment and which the carrier had notice that the shipper would likely sustain by reason of the detention of the property beyond a reasonable time for its transportation and delivery, as the law implies in such case that such damages were in contemplation of the parties at the time the contract was made.

**2.—Same—Damages—Interest—Pleading—Demurrer.**

Upon a general demurrer every reasonable intendment should be indulged in favor of the pleading excepted to. In a suit against a railway company for damages caused by unreasonable delay in the transportation and delivery of cotton, plaintiffs claimed three distinct items of damages—first, loss of the use of the money invested in the cotton during the delay; second, losses caused by plaintiffs being compelled to buy cotton on a rising market to meet outstanding contracts theretofore made; third, the penalty of five percent per month upon the value of the cotton as provided by arts. 4494 and 4496 of the Rev. Stats. Petition considered, and held, because the count in the petition as to the first item of damage was good upon general demurrer, the court erred in sustaining a general demurrer to the petition and dismissing the suit. When a suit is based upon several distinct causes of action, if any one of them is sufficiently declared upon, a general demurrer to the petition should be overruled.

**3.—Same—Consequential Damages—Pleading.**

When, by reason of the negligent delay of a railroad company in the transportation and delivery of cotton, the shipper is obliged to buy other cotton with which to meet outstanding contracts and thereby sustains a loss, the damages suffered are consequential damages and can only be recovered from the carrier upon pleading and proof that the carrier had notice of the special

conditions rendering such damage the natural and probable result of the breach of the contract of shipment and of circumstances showing that the contract was to some extent based upon or made with reference to such conditions. This notice must ordinarily ,be given at the time of or before making the contract.

**4.—Same—Statutory Penalty—Pleading.**

In suits for the penalty provided by art. 4496, Rev. Stats., in addition to showing a negligent delay of the shipment beyond the time reasonably necessary for its transportation, the specific date or time of the shipment must be alleged as well as the value of the shipment. In such cases the rules of pleading require that the facts relied on should be stated directly and positively and not by way of inference. Pleading considered in an action for said penalty and held insufficient.

**5.—Carrier—Delayed Transportation—Pleading.**

In an action against a railroad company for damages for negligent delay in the transportation and delivery of cotton, pleading considered and held not subject to exception on the ground that it was not alleged with sufficient particularity who were the parties to the contract of shipment, the date of the same and the terms of the contracts and agreements therein contained. Nor was said pleading subject to the exception that it did not appear therefrom which of several shipments were made by different parties alleged to have made such shipments, there being nothing in said petition to indicate that each of the alleged consignors made separate shipments, but on the contrary it appeared from the allegations that the parties named were joint consignors.

**6.—Same—Pleading—Multifariousness.**

In a suit against two railroad companies for damages for breach of eighty-five different contracts of shipment made from different places, petition considered, and held not subject to exception upon the ground that it was multifarious; the plaintiffs were not required to bring a separate suit under each contract.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Harris & Harris,* for appellants.

*Wilson & Dabney,* for appellees.

McMEANS, ASSOCIATE JUSTICE.—This is a suit by Dorrance & Co. against the International & Great Northern Railroad Company and the St. Louis, Southwestern Railway Company to recover damages for the alleged unreasonable delay in the transportation of about six thousand bales of cotton under about eighty-five separate contracts of shipment.

General demurrers and special exceptions urged by defendants to the plaintiffs' petition were sustained, and, the plaintiffs having declined to amend, the trial court entered judgment dismissing their suit, and from this judgment plaintiffs have appealed.

Plaintiffs' original petition, omitting the formal parts, is as follows: "That heretofore, to wit, on the first day of October, A. D. 1906, and ever since, the aforesaid defendants, and each of them, were common carriers and connecting lines within the State of Texas, as aforesaid, and on said date, and ever since, plaintiffs were cotton buyers and sellers.

"That on said first day of October, 1906, and on various and sundry dates thereafter, down to about the first day of March, 1907, there were delivered to defendant, St. Louis Southwestern Railway Company of Texas, at Gatesville, Leon Junction, Mounds and Oglesby, in the State of Texas, by W. L. Ayres and W. B. Cavitt and E. H. Hellen, consignors, a great number of bales of cotton, to wit, about the sum of six thousand bales, which were received by the defendant, the St. Louis Southwestern Railway Company of Texas, to be delivered to plaintiffs under the firm name and style of Dorrance & Company, at Houston, Harris County, Texas, for which defendant, the St. Louis Southwestern Railway Company, executed and delivered bills of lading over its own lines, and over the line of the defendant, the International & Great Northern Railroad Company, to point of destination, Houston, Texas; the precise number of bales so shipped, the marks on each bale, the point of shipment, and the number and date of the bill of lading, being set forth in detail in Exhibits A, B and C, hereto attached and made a part hereof.

"That defendants, and each of them, as connecting lines and common carriers within the State of Texas, in consideration of a reasonable compensation, to wit, the proper freight charges then paid or agreed to be paid to defendants by plaintiffs, agreed to promptly forward from point of shipment to point of destination, and to promptly deliver within a reasonable time to plaintiffs at Houston, Texas, the aforesaid bales of cotton.

"That defendants, and each of them, in violation of their agreement to promptly transport and deliver said cotton to plaintiffs within a reasonable time, and, to wit, within a period of about ten days, utterly neglected to transport the aforesaid cotton within a reasonable time; but, on the contrary, said defendants, and each of them, delayed said cotton in transportation over the reasonable time of, to wit, about ten days, by delay on different shipments of from five to ninety days, over and above the aforesaid reasonable time of, to wit, about ten days for transportation; the number of bales, and the date when received at point of destination, to wit, Houston, Texas; and the number of days of excess in transportation, after allowing ten days for transit, upon each lot of cotton shipped, being shown in detail in Exhibits A, B and C, hereto attached and made a part hereof.

"That the defendant, the St. Louis Southwestern Railway Company of Texas, issued through bills from point of shipment to Houston, Texas, for each of said lots of cotton, upon its own line, and over the line of its connecting common carrier, to wit, defendant International & Great Northern Railroad Company, the number and the date of each bill of lading, together with the number of bales, the marks and the point of shipment, being all shown in detail in Exhibits A, B and C, hereto attached and made a part hereof.

"That the said bills of lading when issued, as aforesaid, to the consignors, were attached to drafts by said consignors and forwarded to plaintiffs herein for payment; and that, in accordance with the usual custom of the cotton trade, plaintiffs, upon receipt of said drafts, at once paid the amounts thereof, being the invoice value, whereupon the aforesaid bills of lading were delivered to plaintiffs, to be finally sur-

rendered by plaintiffs to defendants upon actual delivery of the cotton called for.

"That upon each draft as paid, plaintiffs were compelled to pay the usual banking rate of seven percent (7%) interest, the aggregate amount of interest so paid on the aforesaid shipments being the sum of, to wit, $1,064.49 damage caused these plaintiffs by the failure of defendants, and each of them, to promptly transport and deliver within a reasonable time the aforesaid cotton; the amount of interest so paid being shown in detail upon Exhibits A, B and C, hereto attached, and made a part hereof.

"And plaintiffs say that they were further damaged in addition to the loss of the use of their money, and the consequent necessity of paying interest on their overdrafts in this, to wit: That pending the delay in the prompt delivery of said cotton the price of spot cotton was gradually advancing, and these plaintiffs were forced to go into the open market at Houston, Texas, and buy other cotton on the spot in Houston, Texas, and at other points in Texas, at a premium, on account of the advancing price of cotton, in order to fill contracts made by plaintiffs for the sale of cotton and for freight engagements by steamer out of Galveston, Texas; and the sum so paid by way of premium on account of advanced price of cotton amounting to the sum of about one thousand dollars ($1,000).

"That when the aforesaid cotton was finally delivered by defendant company to plaintiffs, the price of cotton was still higher than it was at the time the aforesaid cotton should have been delivered to plaintiffs, if the same had been properly transported within a reasonable time; but these plaintiffs say that they gained nothing by such advance in price, because, as is the custom of trade with cotton buyers, these plaintiffs had protected themselves at the time they bought the aforesaid cotton, shipped over defendants' connecting lines, by hedging, and selling futures against said cotton, so that what plaintiffs would lose by the decline of the price of cotton they would gain in their futures and what plaintiffs would gain by advance in the price of cotton they would lose in their futures.

"And these plaintiffs further say that by reason of the failure of defendants and each of them as common carriers and connecting lines, to promptly transport and deliver the aforesaid cotton at the regularly appointed time, and, to wit, within a reasonable time after the receipt of the same, that defendants and each of them are bound to pay to plaintiffs all the aforesaid damages which plaintiffs have sustained, with costs of suit, and that in addition to the aforesaid damages defendants and each of them are bound to pay plaintiffs herein special damages at the rate of five percent (5%) per month upon the value of the aforesaid cotton at the time of shipment, by reason of the negligent detention of said cotton beyond the time reasonably necessary for its transportation, the aforesaid special damages aggregating the amount of ten thousand dollars ($10,000), and the amount in detail of such special damages on bills of lading and shipments of cotton being shown in detail in Exhibits D, E and F, hereto attached and made a part hereof.

"Wherefore, plaintiffs pray that citation issue to defendants, and

each of them, and that upon final hearing plaintiffs have judgment against defendants, and each of them, for their damages by way of loss of interest, as heretofore set forth, in the sum of $1,064.49; for their further and additional damages by reason of having to buy other cotton at advanced prices as aforesaid, in the sum of $1,000; and for further and additional special damages in accordance with the statute in such case made and provided, in the sum of $10,000, for all costs of suits, and for such other and further relief, both general and special, at law and in equity as to right and justice may appertain."

The exhibits referred to in the petition were attached thereto and made a part thereof as alleged.

To the petition the defendants each urged general demurrer and certain special exceptions, which appear to be identical, and all of which were sustained.

By their first assignment of error appellants attack the ruling of the court in sustaining the general demurrers of defendants. The damages that may be recovered of a railroad company for delay in the transportation of freight is the difference in the value of the shipment at the time it should have been delivered and the time and place it was actually delivered, together with a sum equal to the legal rate of interest on its value during the time of the delay. In addition to this the law allows a recovery of any special damages occasioned by the delay, which are the natural or probable result of the breach of which the carrier had notice that the shipper would likely sustain by reason of the detention of his property beyond a reasonable time for its transportation and delivery, as the law implies in such a case that such damages were in contemplation of the parties at the time the contract was made.

As will be seen by an inspection of the petition, plaintiffs claimed and sued for three distinct items of damages. The first of these was for the sum of $1,064.49 for the loss of the use of the money paid by them for the cotton during the time its transportation was unreasonably delayed. The allegations in regard to this item, after alleging the shipment and an unreasonable delay in its delivery, are, in substance, that the bills of lading, when issued, were by the consignors attached to drafts and forwarded to plaintiffs for payment, and the drafts were paid on presentation, and that upon each draft as paid plaintiffs were compelled to pay the usual banking rate of seven per cent interest, and the aggregate amount of interest so paid on the amount of the shipments was said sum of $1,064.49, damage caused plaintiffs by the failure of defendants and each of them to promptly transport and deliver the cotton within a reasonable time. "And plaintiffs say that they were further damaged in addition to the use of their money, etc." The petition closed with a prayer for judgment "against defendants, and each of them, for their damages by way of loss of interest as hereinbefore set forth in the sum of, to wit, $1,064.49 . . . " and for general relief.

In Whetstone v. Coffee, 48 Texas, 271, Judge Roberts says: "The petition, however loosely and carelessly worded it may be, seems to cover sufficient ground to contain a cause of action—*prima facie* at

least. Upon a general exception every reasonable intendment should be indulged in favor of the pleading thus excepted to."

In Houston & T. C. Ry. Co. v. Jackson, 62 Texas, 209, the plaintiff sued the carrier for damages for negligent delay in the transportation and delivery of cotton, the petition setting forth the various items of damage, among others being a claim by way of damage, a named sum paid by him to his commission merchant as interest which would not have accrued if his cotton had been transported within a reasonable time after the bills of lading were executed. There was no general prayer for interest, but there was a prayer for a specific sum paid by him while his cotton was detained by the carrier, and this asked interest at the rate of one percent per month during the time the cotton was detained. The trial court allowed interest at that rate, and this the Supreme Court held to be error, because the law deems the legal rate of interest to be fair compensation for the use and detention of money, in the absence of a contract fixing the value of such use or detention; and the same measure of damage, and not a greater, in cases like this should be applied for the detention of that which would have produced money by sale on arrival at its contemplated destination. The court further held that from the nature of the transaction the carrier may be presumed to have known that it was the intention of the owner, directly or indirectly, to convert the cotton into money, and that in that and similar cases the true measure of damages will include interest, as a matter of law; and the judgment of the District Court was reversed and judgment rendered for the appellee for the amount found by the lower court in his favor, less the difference in the aggregate amount of interest allowed at one percent per month and the legal rate. On that authority we conclude that the averments of the petition in respect of the claim for interest were good as against a general demurrer.

Each item of damages sued for constituted a cause of action in itself, and if any one of them is sufficiently declared upon, then the general demurrer should have been overruled, although as to the other items of damage the petition may not state a cause of action. The court in such case should not be required to select the bad from the good and sustain the demurrer as to one item and overrule it as to another. Weatherford, M. W. & N. W. Ry. v. Granger, 85 Texas, 574. We are of the opinion that the court should not have sustained the general demurrer.

Another item of damage claimed by the plaintiffs in their petition is that because of the detention of their cotton by the carriers they were compelled to buy other cotton on a rising market, at a premium, with which to fill their contracts theretofore made, and for freight engagements by steamer out of Galveston; and the sum so paid by them, and for which they sue, they allege, amounted to $1,-000. The damages here sought to be recovered are losses incurred in order to meet collateral engagements, and are what are known as consequential damages, which are never allowed in the absence of notice to the carrier of the special conditions rendering such damages the natural and probable result of the breach, under circumstances show-

ing that the contract was to some extent based upon or made with reference to such conditions. (Missouri, K. & T. Ry. Co. v. Belcher, 89 Texas, 428.) This notice must ordinarily be given at the time of or before making the contract of shipment. It being necessary to establish such facts by proof, it follows that it was equally necessary that they should have been alleged, and this was not done. (Pacific Express Co. v. Darnell, 62 Texas, 641.) We think, therefore, the action of the court in sustaining the general demurrer to this item of damages was not error.

A third item of damages alleged by plaintiff is five percent per month upon the value of the cotton at the time of shipment as special damages arising by reason of the negligent detention of the cotton beyond a time reasonably necessary for its transportation, which damages, it is alleged, amounted to $10,000. These damages are claimed under articles 4494 and 4496 Revised Statutes, which read as follows:

"Art. 4494. Every such corporation shall (1) start and run their cars for the transportation of . . . property at regular times to be fixed by public notice; (2) and shall furnish sufficient accommodations for the transportation of all such property . . . as shall be within (3) a reasonable time previous thereto be offered for transportation at the place of starting, etc., (4) and shall take, transport and discharge such property at, from and to such places on the due payment of tolls, etc."

"Art. 4496. In case of the refusal by such corporation so to take and transport any property, or to deliver same at the regular appointed time, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit, and in case of the transportation of property shall, in addition, pay to such party special damages at the rate of five percent per month on the value of same at the time of shipment, for the negligent detention thereof beyond the time reasonably necessary for its transportation; provided, that in suits of this character the burden of proof shall be on such corporation to show that the delay was not negligent."

The recovery allowed by the statute is in the nature of a penalty; the right of action is strictly statutory, and without this statute the plaintiffs could not recover the damages or penalty specified in it; therefore the plaintiffs must bring themselves strictly within the provisions of the acts in order to recover the penalty prescribed. (Schloss v. Atchison, T. & S. F. Ry., 85 Texas, 604; Houston, E. & W. T. Ry. v. Campbell, 91 Texas, 557; State v. Williams, 8 Texas, 265; Hays v. Stewart, 8 Texas, 360.)

In State v. Williams, *supra,* it is held that in proceedings to enforce statutory penalties the facts constituting the offense must be averred with the same certainty that would be required in a bill of indictment. The facts must be alleged; mere inference will not aid them. (Linberg v. Finks, 7 Texas Civ. App., 391; Texas & Pac. Ry. v. Wood, 23 S. W., 744; Murray v. Gulf, C. & S. F. Ry., 63 Texas, 413.)

In suits for penalty under the statute quoted, in addition to showing a negligent delay of the shipment beyond the time reasonably

necessary for its transportation, the specific date or time of the shipments must be alleged as well as the value of the shipments. This was not done in this case. It is true that by the exhibits attached to the petition the dates of the bills of lading covering the several shipments and the amount of the invoice of each shipment are given; and we might infer from these allegations, if indeed we can look to the exhibits as supplying such omissions in the petition, that the date of each bill of lading was the *time* of shipment and the invoice value the *value* of the cotton shipped. But the rules of pleading require that the *facts* relied on should be stated directly and positively, and not by way of argument or inference. (Arberry v. Beavers, 6 Texas, 473; Greenwood v. Pierce, 58 Texas, 133.)

The allegation that the invoice stated a certain amount as the price at which the goods were sold in the particular transaction is not an allegation of their value at the time of shipment, neither is the date of a bill of lading an allegation of the time of shipment. The importance of strictly following the statutes as to time and value is manifest from the reflection that the penalty is based on the value of the delayed shipment, and the amount is to be computed from the time the shipment is made.

If, however, we are mistaken in saying that the date of the bill of lading is not a sufficient allegation of the time of shipment, then the petition in that regard would be sufficient only in so far as the St. Louis Southwestern Railway Company, the initial carrier, is concerned. Manifestly it would not be good as to its codefendant, the International & Great Northern Railroad Company, the connecting carrier, for as to it there is no allegation as to the time when the cotton passed into its possession, and no facts are stated to show any negligence in transportation after this road received it. This is said with reference to the recovery of the penalty only.

We are not prepared to assent to the contention of appellee that the petition is bad because it is not alleged that the freight charges were paid in advance. The language of the statute is "due payment of the tolls." Due payment means payment in the usual or ordinary course. We think, however, that the alternative allegation that the freight charges "were paid or agreed to be paid" is subject to criticism, but as the petition will probably be amended and the allegation corrected we need make no direct ruling on this probable error.

We are of the opinion that the other objections urged to the pleading by appellees to sustain the general demurrers are not well taken.

Each of the defendants, appellees, specially excepted to the petition on the ground that the petition is based upon alleged contracts, being bills of lading, alleged to have been written and printed instruments, because it is not shown as to each of the alleged shipments (a) who were the special parties thereto; (b) the date of same; (c) the terms of the contracts and agreements therein contained, and that the pleading should set forth either the contract sued on in full, or by stating all of the essential terms of obligation therein contained, and setting the same forth in the words of the contract.

These exceptions were sustained by the court and the correctness of the ruling is challenged by appellants' second and sixth assignments

of error.   We are of the opinion the assignments should be sustained. It was alleged that W. L. Ayres, W. B. Cavitt and E. H. Hellen made the shipments and that appellants were consignees; the date of each bill of lading was shown in the exhibits and it was alleged that by the terms of the contract appellees agreed to promptly forward the cotton from point of shipment to destination and to promptly deliver the same to appellants at Houston within a reasonable time.   The number of bales in each shipment and covered by each contract, the point of shipment, the number and date of each bill of lading and the date when each consignment reached its destination, is stated in the exhibits.

By the third and seventh assignments appellants complain of the action of the court in sustaining the following special exception to the petition urged by each of the defendants, viz.:

"This defendant further excepts to the pleading because it does not appear therefrom which of the alleged shipments were made by W. L. Ayres and which were made by W. B. Cavitt and which were made by E. H. Hellen."

The allegations of the petition are that on sundry dates about six thousand bales of cotton in the aggregate were delivered to the St. Louis Southwestern Railway Company, at certain named places, by Ayres, Cavitt and Hellen, consignors, to be delivered to plaintiffs at Houston.   There is nothing in the petition to indicate that it was intended by the pleader to aver that each of the consignors made separate shipments, the aggregate of which amounted to six thousand bales, but on the contrary it appears from the allegations that the parties named were jointly the consignors of each shipment.   We think the pleading in this regard is sufficient.   It may be that the evidence might show that the consignors did not act together in making the shipments.   If so, the plaintiffs would probably be confronted with a variance between the allegations and proof, but that is a matter that would arise on the introduction of evidence and not by way of exception to pleadings.

The court sustained the following special exception urged by each defendant to plaintiff's petition, and this is made the basis of appellants' fourth and eighth assignments of error:

"This defendant specially excepts to said petition wherein it is stated 'that defendants, and each of them, as connecting lines and common carriers within the State of Texas, in consideration of a reasonable compensation, to wit, the proper freight charges then paid or agreed to be paid, to defendant by plaintiffs, agreed to promptly forward from point of shipment to point of destination, and to promptly deliver within a reasonable time to plaintiffs at Houston, Texas, the aforesaid bales of cotton,' because said allegation as made is an allegation of a conclusion, and because it does not appear from said allegation whether or not the same is alleged to have been an express term of the written contract of shipment alleged, and because if alleged as any obligation of the International & Great Northern Railroad Company, it does not appear from said allegation when or where or by whom the same was made; nor are the terms of said alleged agreement set out."

We think that in order to sustain a recovery for the penalty the petition should have at least alleged the dates when the shipments were delivered to the connecting carrier, for in the absence of such an allegation there was not sufficiently shown by the petition any negligence .on the part of the initial carrier between the time it received the shipments until delivery to the connecting line, nor of the connecting carrier between the time it received the shipment and the time of delivery to the consignee. The other exceptions embraced in said special exception were not well taken and should have been overruled.

Subdivision one of the fourth special exception of the St. Louis Southwestern Railway Company is that the petition is "multifarious, because it appears from its face. that it is against two defendants, on eighty-five different contracts of shipment, made from different places, involving an intolerable number of separate and independent investigations, and presenting such a number and diversity of issue to the jury that it would be impossible to try the case in a due and orderly course of procedure in such a way as not to confuse the issues." .

This exception was also sustained, and we think this was error. It appears that the consignors and consignees in each shipment were alleged to be the same, and it is alleged that each contract was made with the defendant that urged the exception. No good reason is perceived why the issues presented could not be determined in one proceeding, and under the policy of our law, which discourages a multiplicity of suits, we do not think that the plaintiffs should be required to bring a separate suit upon each contract; and had they done so in the first instance it seems probable that a consolidation could have been required, or that the prosecution of separate suits could have been enjoined. (Galveston, H. & S. A. Ry. v. Dowe, 70 Texas, 6.) And this is true, we think, even had it been alleged in the petition that Ayres, Cavitt and Hellen each made separate shipments.

For the errors indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*