### City of Denison v. Denison & Sherman Railway Company.

#### No. 2045. Decided April 27, 1910.

**1.—Contract—Construction—Practice on Appeal.**

Where the proper construction of a contract depends on a question of fact, the effect of conflicting evidence as to the meaning of words used in it, the Appellate Court, on reversing for error in the determination reached, should remand and not render judgment. (P. 347).

**2.—Contract—Construction—Double Track—Switch.**

A street railway had, by its contract with a city, the right to lay tracks in the center of specified streets; it could construct switches only with consent of the Council; but such contract itself gave it a right to lay double tracks on Main Street or any part thereof, the distance of such tracks from the center of the street being specified. Having a single track on this street it proposed to make its tracks double for the length of one block, to enable cars to pass each other. Held, that such construction was of a switch and not of a double track within the meaning of the contract. (Pp. 345–348).

Error to the Court of Civil Appeals for the Sixth District in an appeal from Grayson County.

The Denison & Sherman Railway Company sued the city for injunction. Defendant had judgment and on plaintiff's appeal this was reversed and judgment rendered in its favor. On this ruling defendant, appellee, obtained writ of error.

*N. H. L. Decker,* for plaintiff in error.—Before this case we sincerely doubt if any practical railroad man ever knew in his experience any other name for the structure proposed by appellant than the general and universal name of switch. A passing track of only four hundred feet in length can never be called and considered as a double track, and within the contemplation of the parties to this suit it was never meant to apply the term "double track" to a short piece of construction where cars going one way must stop and wait for cars coming another. That if judgment of the court below ought not to be affirmed, then the cause should be remanded. See the following authorities: Rev. Stats., art. 1027; Patrick v. Smith, 90 Texas, 274; Stevens v. Masterson, 90 Texas, 424; Choate v. San Antonio & A. P. Ry. Co., 91 Texas, 409-10; Burgess v. W. U. Tel. Co., 92 Texas, 128; Dashiell v. Johnson, 99 Texas, 546.

*Head, Dillard & Head,* for defendant in error.—The undisputed

evidence showed that the tracks which plaintiff proposed to construct in the 300 block would consist of two parallel tracks, the inside rails of which would be not more than five feet apart, and the court erred in holding that this would not constitute double tracks within the meaning of appellant's franchise, which authorizes it to "construct double tracks on Main Street, or any portion thereof." Workman v. Southern Pac. Ry. Co., 62 Pac., 185; Mayor of Houston v. H. B. & M. P. Ry. Co., 84 Texas, 581; Romer v. St. Paul City Ry. Co., 75 Minn., 211, 74 Am. St. Rep., 455; Beaumont Traction Co. v. Brock, 48 Texas Civ. App., 41; Ransom v. Citizens Ry. Co., 104 Mo., 375; Georgia R. & B. Co. v. Maddox, 42 S. E., 315, 322.

The right given appellant to construct, maintain and operate a system of street railways in the city of Denison carried with it the right to construct, in connection therewith, the necessary switches, turntables, etc., and even if section 1 of the franchise stood alone, and the work which appellant proposed to do would constitute a switch within the meaning of said section, the city counsel would not have the right to arbitrarily refuse to permit it being placed at a particular place, but such refusal would have to be based upon good reasons. Workman v. So. Pac. Ry. Co., 62 Pac., 185; Mayor of Houston v. H. B. & M. P. Ry. Co., 84 Texas, 581; Romer v. St. Paul City Ry. Co., 75 Minn., 211, 74 Am. St. Rep., 455.

The provision in section 3 of the franchise, which gives the appellant the right to construct double tracks on Main Street, or any portion thereof, does not restrict its right to construct such tracks to be used independently of each other, but was intended to confer the right to place such double tracks on any portion of said street to be used in the operation of the street car system as a whole, and the use of said tracks for the purpose of permitting the cars to pass each other would be a proper use, and the fact that double tracks so constructed might be appropriately termed a switch, or passing tracks, would be immaterial.

MR. JUSTICE BROWN delivered the opinion of the court.

The city of Denison was organized under a special charter which empowered it to make the contract hereinafter stated. The Denison & Sherman Railway Company is a corporation organized under the laws of the State with power to construct a street railway in the city of Denison.

In 1895 the city of Denison, by an ordinance regularly adopted, granted to Scott, Youree & Scott a franchise authorizing them to construct, maintain and operate in said city a street railway upon Main Street and other streets and avenues of the city. The franchise was to continue for fifty years from the date it was granted. The railroad company now owns that franchise.

The portion of the ordinance material to the question before us we copy as follows:

"That there is hereby granted to Messrs. Scott, Youree & Scott, their successors or assigns, the right and privilege to construct, maintain and operate a street railway in the city of Denison for a term of fifty years from the date of the passage and approval of this ordi-

nance under the conditions herein mentioned, together with the right to relay, repair and improve any and all lines of the said railway and to build such switches and turntables, with the consent of the city council, as may be deemed necessary for the proper conduct of the business pertaining to a street railway.

"The said line of railway shall not be less than one and one-half miles in length, and shall be substantially built of good material, and shall have a gauge of not less than forty-two inches, and shall be laid in the center of the streets and avenues; provided, however, that the grantees herein, their successors or assigns, shall have the right to construct double tracks on Main Street, or any portion thereof. Said tracks shall be laid on either side of the center of said street, as near thereto as the operation of the service will permit, the inside rails of each track to be laid not more than two and one-half feet from said center.

"The ground between the rails and for a distance of one foot on the outside of each rail, and where the right is given to the said Scott, Youree & Scott, their successors or assigns, to lay double tracks on any streets or avenues the ground between the inside rails of each of said tracks shall be kept in conformity with the grade of the street or avenue on which the same shall be laid, and shall always be kept in good order for travel and shall be paved, macadamized or graveled by the said Scott, Youree & Scott, their successors or assigns, at their own expense in the same manner and at the same time as the streets or avenues through which the track is laid shall be paved, macadamized or graveled."

The city of Denison determined to pave Main Street and was preparing to do so when the railway company filed the petition in this suit in the District Court of Grayson County, praying for a writ of injunction against the city and against the contractors to prevent them from paving block No. 300 in the said city, claiming and alleging that it had the right to construct and operate on Main Street within the limits of said block a structure represented by this sketch:

The company based its application for the injunction upon the claim that it had the authority to construct double tracks on the said Main Street and that it was intending so to do upon that portion of Main Street within the limits of block No. 300. The city claimed that by the terms of the ordinance the company was not authorized to construct a switch or switches on any street or avenue of the city without the consent of the city and no such consent had been given and it also claimed that the structure proposed to be placed in the street was not double tracks within the meaning of the ordinance, but was a switch and that the building of the said switch on Main Street would greatly impair its use by the public.

The trial was had by the judge without a jury. Experts were introduced on both sides to testify as to what was the meaning of the words "switch" and "double track." As is usually the case, the experts disagreed. For the railway company the experts called testified that the structure as exhibited by the sketch constituted a double track, while the experts for the city testified that it would be a switch. The judge solved this conflict by finding in favor of the city that the proposed structure would be switch and not embraced within the meaning of the words "double tracks," refusing to grant the writ of injunction. The Court of Civil Appeals of the Sixth District reversed the judgment of the District Court and ordered that a writ of injunction issue to prevent the paving of the street so as to interfere with the structure proposed to be constructed by the railway company.

As submitted to the court upon the pleading and the evidence there was presented a question of fact as to the proper construction of the contract in the particulars above referred to, and the conflict having been solved in favor of the city, the Court of Civil Appeals was not authorized upon the reversal of the judgment to render judgment in favor of the railway company.

The Court of Civil Appeals did not treat the issue as one of fact, but seems to have concluded, as a matter of law, that the words "double tracks" in the ordinance embraced the structure which was proposed to be placed in the street by the railway company, and we will now consider the terms of the contract without reference to the parol evidence.

Article 4522 of the Revised Statutes of this State reads as follows:

"When a company constructs a switch on its road for the accommodation of freighters, they shall be bound to furnish a sufficient number of cars for the transportation of freight therefrom when requested so to do, and in default shall be subject to the same penalties as in other cases of neglect of the like character."

In Houston E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551, the meaning of the word "switch" was presented for decision. The object of the suit was to recover penalties for a refusal or failure of the railroad company to furnish cars at "Campbell's switch," to be loaded with wood for transportation. In passing upon the question Chief Justice Gaines for the court defined the word "switch" as follows: "A switch is a mere sidetrack, so constructed as to permit the passage of cars from and to the main track; and it is a matter of common knowledge that railroads have many switches where freight is neither received nor discharged." This definition of a switch conforms to the testimony of the experts introduced by the city in this case and also conforms to the common knowledge of men with reference to the ordinary use of that word. We think that from this statute and from the decision quoted the word "switch" has a meaning in addition to its technical meaning depending upon facts which indicate its character.

We are of opinion that the contract itself furnishes the evidence upon which the judgment of the District Court should be sustained. In granting the permission of the city to construct double tracks

upon Main Street, or any part thereof, the city gives directions as to how these tracks shall be constructed, which in their very nature necessarily determines that there must be two independent tracks.

The ordinance which granted the right required that the single tracks be laid in the center of the streets or avenues; that the rails shall not be less than forty-two inches apart, and in the same clause is this language: "Shall have the right to construct double tracks on Main Street, or any portion thereof. Said tracks shall be laid on either side of the center of said street, as near thereto as the operation of the service will permit, the inside rails of each track to be laid not more than two and one-half feet from the said center." The distinction is plain, between the single track, which is to be laid in the center of the street, and the double tracks, to be laid on opposite sides of the center of the street. The directions for laying the "double tracks" indicate clearly that there were to be two tracks independent of each other and to be operated independently. The distance between the double tracks was necessary so that when the cars on each track should be moving in opposite directions they could pass each other without interference. There could be no need for such direction in the construction of a switch, such as is represented by the design copied herein, because that can answer but one purpose, that is, for cars to stand upon while others pass upon the main line, which fulfills the definition of "switch," as given in the case of the Railroad Co. v. Campbell, cited above. The "switches" necessary to a double track would be the device by which the cars could be shifted from one track to the other. Such a structure as proposed to be put into Main Street on block 300 would have no place in the construction of double tracks. In Ransom v. Citizens' Ry. Co., 16 S. W., 416, an ordinance in substance the same as the one before us was under consideration, and the court said: "But grants of such rights and privileges in the public streets must not be extended by construction beyond the fair and reasonable meaning of the language in which they are expressed. In the present case the first section of the ordinance confers the right and privilege to construct double tracks, but it is claimed that this refers only to such tracks as are used for turnouts or switches. Viewing the ordinance as a whole, we consider its fair and reasonable reading to be that a single track, with turnouts, was authorized; but the privilege of laying a double track, if or when needed, was likewise intended to be given. A single track was, no doubt, in immediate contemplation when the ordinance was passed; for, with a double track in use, there would have been no need for turnouts or switches."

We are of opinion that independent of all parol evidence the very terms of the contract itself are of such definite character as to make it susceptible of but one construction, which is, that the double tracks permitted by the contract were to consist of two independent tracks, just what the language means, so as to accommodate the service of the railroad upon that street. The provisions of the contract absolutely forbid the idea that such arrangement of the rails as is represented in the design presented here should be considered "double tracks."

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*