## R. R. SPARKS v. THE STATE.

### No. 3447. Decided February 24, 1915.

**1.—Theft of Automobile—Felony—Misdemeanor—County Court.**

Under section 1 of chapter 100, Act of Thirty-third Legislature, the theft of an automobile of value in excess of fifty dollars is a misdemeanor of which the County Court has jurisdiction, and not a felony of which the District Court has jurisdiction, and the articles of the Penal Code defining theft of personal property in excess of $50 have no application with reference to this specific offense. Following Harris v. State, 17 Texas Crim. App., 132.

**2.—Same—Statutes Construed—Temporary Taking—Theft.**

The contention of the State that it was not the intention of the Legislature to provide a particular punishment for the theft of the articles mentioned in section 1, chapter 100, Acts of Thirty-third Legislature, but simply to provide punishment for the temporary taking or use of same is untenable, as said Act is unambiguous, and such was the intention of the Legislature; towit, theft of a specific kind.

**3.—Same—Rule Stated—Statutes Construed—Legislative Intent.**

It is only when a statute is ambiguous by its terms that courts may rightfully exercise the power of controlling its language, so as to give effect to what they may suppose to have been the intention of the lawmakers. If the language of the statute is plain and unambiguous, there is no room for construction, and where the meaning of the words used is plain, the Act must be carried into effect according to its language, or else the court would be assuming legislative authority. Following Murray v. State, 21 Texas Crim. App., 620, and other cases.

**4.—Same—Rule Stated—Statutes Construed—Words and Phrases.**

The Code provides that words which have their meaning specially defined shall be understood in that sense, though it be contrary to their general meaning; and all words used in the Code, except where a word is specially defined, are to be taken and construed in the sense in which they are understood in common language, and the words "steal" and "stolen" when used in the Code in reference to the acquisition of property include property acquired by theft, and the words "steal" and "stolen" are synonymous with theft. Following Carr v. State, 9 Texas Crim. App., 463, and other cases.

**5.—Same—Rule of Construction—Suggestions to Legislature.**

This court cannot legislate nor has it authority to annul an Act of the Legislature by unwarranted interpretation or construction, and can only call the attention of the Legislature to the unequal provisions of the Code in this behalf, and suggest that the punishment for theft of an automobile and other vehicles be made equal and uniform with the theft of other personal property of equivalent value.

**6.—Same—Practice on Appeal—Misdemeanor—Transfer.**

Where a prosecution for theft of an automobile under section 1, chapter 100, Acts of Thirty-third Legislature, was brought in the District Court, and the defendant was convicted of a felony, the judgment must be reversed and the cause remanded with instructions to the District Court to transfer the cause to a court having jurisdiction of misdemeanor cases.

Appeal from the District Court of Clay. Tried below before the Hon. Edgar Scurry.

Appeal from a conviction of theft of an automobile under section 1, chapter 100, Act of ·Thirty-third Legislature; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wantland & Parrish,* for appellant.—On question that the offense is a misdemeanor and that the District Court has no jurisdiction to try same: Payne v. State, 17 Texas Crim. App., 40; Harris v. State, 17 Texas Crim. App., 132; Marshall v. State, 4 id., 549; Guest v. State, 24 id., 530; Roberts v. State, 33 Texas Crim. Rep., 83; Bawcom v. State, 41 Texas, 189; Lunn v. State, 44 id., 85; Long v. State, 46 S. W. Rep., 821; Roberts v. State, 24 S. W. Rep., 895.

*C. C. McDonald,* Assistant Attorney General, for the State.—Cited authorities in opinion.

HARPER, JUDGE.—Appellant was prosecuted for theft of an automobile, of value exceeding one thousand dollars, and his punishment assessed at two years confinement in the penitentiary.

The facts clearly justified the jury in finding that appellant was guilty of the theft of the automobile, and the sole question we deem it necessary to discuss (which is raised in several different ways) is theft of an automobile of value in excess of $50 a felony, as is the theft of other personal property, or has the Legislature by section 1 of chapter 100 of the Acts of the Thirty-third Legislature singled out the theft of several articles of personal property and made it a misdemeanor to steal them? Said section reads:

"Section 1. Whoever shall steal or purposely takes, drives or operates, or purposely causes to be taken, driven or operated upon the public road, highway, or other public place, any motor vehicle, bicycle, buggy, carriage or other horse driven vehicle, without the consent of the owner thereof shall, if the value of such motor vehicle, bicycle or other vehicle is thirty-five ($35) dollars or more, be imprisoned in the county jail for not less than six months nor more than one year, or if the value is less than that sum, be fined not more than two hundred ($200) dollars or imprisoned not more than thirty days, or both."

Although the indictment specifically charged the theft of an automobile of the value of $1200, the court permitted the trial to be had under the articles of the Code defining theft of personal property in

excess of fifty dollars, and a term in the penitentiary to be awarded appellant.

Articles 1353, 1354 and 1355 of the Penal Code, in defining theft of particular things, read:

"Article 1353. If any person shall steal any horse, ass or mule, he shall be punished by confinement in the penitentiary not less than two nor more than ten years."

"Article 1354. If any person shall steal any cattle or hog, he shall be punished by confinement in the State penitentiary not less than two nor more than four years."

"Article 1355. If any person shall steal any sheep or goat, he shall be punished by confinement in the State penitentiary for not less than two nor more than four years."

As applicable to the indictment and facts in this case, section 1 of chapter 100, Acts of the Thirty-third Legislature, reads: Whoever shall steal any motor vehicle, bicycle, buggy, carriage or other horse-driven vehicle, if the value of such motor vehicle, bicycle, buggy or carriage is thirty-five dollars or more, shall be imprisoned in the county jail for not less than six months nor more than one year.

Article 1339 of the Penal Code prescribes that theft of certain particular kinds of property, as of a horse, property wrecked, etc., have a punishment affixed differing from the general punishment of the crime of theft; whenever, therefore, the law provides a particular punishment for theft committed in regard to a special kind of property, theft of such property is not included within the law affixing a general penalty to the offense.

See also section 1342 which provides that the articles of the Code prescribing the punishment of theft of property over and under fifty dollars do not apply to cases of theft of any particular property where the punishment is specially prescribed.

It may be said that it seems strange that, as the evidence clearly shows the theft of the automobile, and that its value is in excess of fifty dollars, he may not be convicted and punished for the theft of property in excess of fifty dollars, instead of being tried and punished under section 1 of chapter 100, Acts Thirty-third Legislature, but the Legislature in its wisdom seems to have so provided by express enactment, as above shown. This question was before this court in Harris v. State, 17 Texas Crim. App., 132, and the court said: "It appears paradoxical to hold that when the defendant has been proved beyond question to be guilty of the theft of property of the value of twenty dollars or over, still he can not be convicted under an indictment charging such a theft, because the evidence shows further that he stole the property privately from the person of its owner. The transaction is the same, and he can not be guilty of stealing from the person privately without at the same time being guilty of theft under the general definition of that offense. But, as unreasonable as this may seem to the unprofessional mind, it is nevertheless the rule of the law, and is founded

upon good reason. Whether or not the statute which makes this distinction between theft generally and theft from the person, so as to prevent a conviction of the latter under an indictment for the former, is wise legislation is not for us to determine. We can only administer the law as we find it, and we find that the Legislature has created and defined the specific offense of theft from the person, and has prescribed therefor a maximum punishment less than that prescribed for the theft of property of the value of twenty dollars or over, and ·making said offense a felony regardless of the value of the property stolen. And it is further expressly provided that the penalty prescribed for theft generally does not apply to theft from the person. (Penal Code, art. 737.) Such being the case, the defendant, if punished, must be punished alone for the specific offense committed by him."

However, our able Assistant Attorney General, in a brief filed, earnestly insists that it was not the intention of the Legislature to provide a particular punishment for the theft of a motor vehicle; that it was not for the theft of the articles named the Legislature intended to provide such punishment, but for the mere temporary taking and use of same, and he cites many authorities which correctly hold that · from reading the provisions of the entire Act we shall search for the intent of the Legislature, and to give effect to that intent, even though it may become necessary that the literal meaning of the words be departed from, and that to carry out the intent of the Legislature, the meaning of the words may be enlarged or restricted, or words may be disregarded or entirely eliminated, citing Sutherland on Statutory Construction, and other authorities. This is undoubtedly the law when the words used are ambiguous, subject to two constructions, or from reading the entire Act such meaning can be given to the language used; and by reading the Act it is manifest that such was the intent of the Legislature. But Mr. Sutherland also correctly states that when the intention of the Legislature is so apparent from the face of the statute that there can be no question as to the meaning of the words used, there is no room for construction; that it is not allowable to interpret what has no need of interpretation, and to attempt to do so would be to exercise legislative functions, saying there is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it expresses. When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself to be effected by the Legislature and not by judicial construction. (Sec. 367.)

This court has held that it is only when a statute is ambiguous by its terms that courts may rightfully exercise the power of controlling its language, so as to give effect to what they may suppose to have been the intention of the law-makers. If the language of the statute is plain and unambiguous, there is no room for construction. That it is only in cases where the meaning of the statute is doubtful that the courts are authorized to indulge in conjecture as to the intention of the Legislature, or to look to consequences in the construction of the law. Where

the meaning of the words used is plain, the Act must be carried into effect according to its language, or the courts would be assuming legislative authority. (Murray v. State, 21 Texas Crim. App., 620; Holden v. State, 1 Texas Crim. App., 224; Smith v. State, 18 Texas Crim. App., 454.) And this seems to be the universal rule. Kelley v. Burke, 132 Ala., 235; Railway Co. v. B'Shears, 59 Ark., 237; Davis v. Hart, 123 Cal., 384; Lee Bros. Furn. Co. v. Cram, 63 Conn., 433; Powell v. Spackman, 7 Idaho, 692; People v. Rose, 174 Ill., 310; Commissioners v. State, 148 Ind., 675; Grimes v. L. of H., 97 Iowa, 315; Robertson v. Robertson, 100 Ky., 696; Davis v. Randall, 97 Me., 36; Barker v. Hebbard, 81 Mich., 267; Cone v. Nimocks, 78 Minn., 249; Lemonius v. Mayer, 71 Miss., 514; Davenport v. Hannibal, 120 Mo., 150; Butte Hardware Co. v. Sullivan, 7 Mont., 307; New York v. Manhattan Ry. Co., 143 N. Y., 1; Randall v. Richmond & D. R. R. Co., 107 N. C., 748; Choctaw Ry. Co. v. Alexander, 7 Okla., 591; Rodenbaugh v. Philadelphia Traction Co., 190 Pa. St., 358; State v. Foster, 22 R. I., 163; State v. Manson, 105 Tenn., 232; Miles v. Wells, 22 Utah, 55; State v. Mounts, 36 W. Va., 179; Gilbert v. Dutruit, 91 Wis., 661; Bank v. Ludvegsen, 8 Wyo., 230; Yerke v. United States, 173 U. S., 439; Swarts v. Siegel, 117 Fed. Rep., 13. In Black on Interpretation of Laws, chapter 3, beginning on page 35, this question is treated exhaustively, and that eminent writer says:

"In the case supposed, where the language of the statute is free from ambiguity, and conveys a definite and sensible meaning, the courts should not hesitate to give it a literal interpretation merely because they have doubts as to the wisdom or expediency of the enactment. In such a case these are not pertinent inquiries for the judicial tribunals. If there be any unwisdom in the law, it is for the Legislature to remedy it. For the courts the only rule is 'ita lex scripta est.' Neither have the judges any authority, in such a case, to put upon the statute a construction different from its natural and obvious meaning in consideration of the consequences which may result from it. Any evil consequences to the public which may flow from the statute may be considered when its meaning is doubtful, in order to give it a more beneficial construction, but when the legislative intent is clearly expressed, such consequences can not be at all considered. And it has been said: 'If the precise words used are plain and unambiguous, we are bound to construe them in their ordinary sense, even though it does lead to an absurdity or manifest injustice. Words may be modified or varied where their import is doubtful or obscure, but we assume the functions of legislators when we depart from the ordinary meaning of the precise words used, merely because we see, or fancy we see, an absurdity or manifest injustice from an adherence to their literal meaning.

"Even if the court is fully persuaded that the Legislature really meant and intended something entirely different from what it actually enacted, and that the failure to convey the real meaning was due to inadvertence or mistake in the use of language, yet, if the words chosen by the Legislature are not obscure or ambiguous, but convey a precise and sensible

meaning, then the court must take the law as it finds it, and give it its literal interpretation, without being influenced by the probable legislative meaning lying back of the words. In that event, the presumption that the Legislature meant what it said, though it be contrary to the evident fact, is conclusive."

Not only is this the general rule of law, but our Legislature, to make it plain that it was our duty to so construe the law, has provided that "words which have their meaning specially defined shall be understood in that sense, though it be contrary to their general meaning; and all words used in this Code, except where a word is specially defined, are to be taken and construed in the sense in which they are understood in common language" (art. 10, Penal Code), and then in article 1344 the Legislature proceeds to define the word "steal,"—"The words steal and stolen when used in this Code in reference to the acquisition of property, include property acquired by theft." And under the statutory definition it is held that "steal" and "stolen" are synonymous with "theft." Carr v. State, 9 Texas Crim. App., 463; Sands v. State, 30 Texas Crim. App., 578.

The writer can hardly conceive that the Legislature intended to make the theft of a $1000 or $5000 automobile a misdemeanor, and theft of a $10 or $20 hog or goat a felony, but such is the plain letter of the statute as enacted by them, for section 1 of chapter 100, Acts Thirty-third Legislature, provides: "Whoever shall steal any motor vehicle, if the value is $35 or more, shall be imprisoned in the county jail for not less than six months nor more than one year." Was not the language unambiguous and susceptible of no other construction, we would hesitate long before so declaring the law to be, but as the language is plain and subject to no other construction, this court can not legislate, nor has it authority to annul an Act of the Legislature by unwarranted interpretation or construction, no matter how unwise we might think such legislation to be. Under the Code we can only call the attention of the Legislature to these to us seeming unjust and unequal provisions of the Code, and suggest that the punishment for theft of an automobile and other vehicles be made equal and uniform with the theft of other personal property of equivalent value. But if they deem it not unwise, they have the authority to so provide.

Having this view of the law, renders it necessary to reverse this case and remand it to the District Court of Clay County, with instructions to transfer it to the court in that county having jurisdiction of misdemeanor cases.

The judgment is reversed and remanded with instructions.

*Reversed and remanded with instructions.*