NICK BRAUMILLER ET AL. v. ROBERT I. BURKE ET AL.

No. 2747.   Decided April 20, 1921.

(230 S. W., 400.)

**1.—Jurisdiction—Boundary.**

Where conversion of gravel and timber removed from land is conceded save as to amount and damages, the only issue being as to ownership, and this dependent on the true location of the boundary line between plaintiff and defendant, proprietors of adjoining tracts, the action is one of boundary, —one in which there would have been no case but for disputed lines,—and in which no writ of error would lie to the Supreme Court.   (Pp. 146-149).

**2.—Same—Mandamus—Conflicting Decisions.**

Where the case is one of boundary and no writ of error lies to the Supreme Court, it may enforce by writ of mandamus its right to review the decision of the Court of Civil Appeals on the ground that the latter's ruling conflicts with previous decisions.   (P. 146).

**3.—Boundary—Course and Distance—Marked Line—Question of Fact.**

Where the corners and their mark-bearing trees called for in the grant have disappeared, evidence of the existence of an ancient marked line and of reputation that this was the line of the original survey was admissible, though it was not shown that these marks were made by the locating surveyor, and though they were not called for in his field notes, and did not correspond with the location of such line as fixed by the course and distance called for; and such evidence was sufficient to present an issue of fact as to the true location of such line.   The ruling of the appellate court herein (173 S. W., 609) that the location of such line by course and distance must prevail, as matter of law, was in conflict with previous rulings in Thacker v. Wilson, 122 S. W., 938; Goodson v. Fitzgerald, 135 S. W., 696; and Titterington v. Kirby, 47 Texas Civ. App., 595, 106 S. W., 899.   (Pp. 149-155).

Original application to the Supreme Court for writ of mandamus requiring the Court of Civil Appeals for the Sixth District to certify to them on the ground of conflict of its rulings in the case of Braumiller v. Burke, 173 S. W., 609, with previous rulings of courts of Civil Appeals, the case in which such conflict arises.

*Glass, Estes, King & Burford,* and *King, Mehaffey, & Wheeler* for relators.

*Chas. S. Todd* and *R. W. Rodgers,* for respondents.

This being a suit for $2,000.00 damages for trespass and conversion of gravel and timber, as well as for the recovery of land, the Supreme Court had jurisdiction to grant a writ of error to review the judgment of the Court of Civil Appeals.   West Lumber Co. v. Goodrich, 223 S. W., 185.

A writ of *Mandamus* does not lie to compel the Court of Civil Appeals to certify questions of law when the relator has an adequate remedy at law. State v. Fisher, 94 Texas, 491.

*Mandamus* cannot perform the functions of a writ of error. Aycock v. Clark, 94 Texas, 377; State v. Morris, 86 Texas, 229; Steel v. Goodrich, 87 Texas, 402.

MR. JUSTICE PIERSON delivered the opinion of the court.

Relators brought this proceeding for writ of mandamus to direct the Court of Civil Appeals for the Sixth Supreme Judicial District to certify to this Court certain questions of law—alleging that the case as made in the trial court is a case of boundary under Article 1591, R. S. 1911 and that the opinion of the Court of Civil Appeals is in conflict with opinions in certain cases of other Courts of Civil Appeals.

We first address our attention to the question as to whether the case is one of boundary. If it is not, relators would have had their remedy by writ of error to this Court, and would not be entitled to the award of a mandamus.

Respondent C. C. Burke, as plaintiff below, instituted this suit against Braumiller et al., alleging that he is the owner and in possession of the Burke Survey of land in Bowie county, and describing it by metes and bounds. He alleged that defendants Braumiller et al., acting jointly and severally, wrongfully entered upon and took possession of a part of said land, consisting of a strip of about ten acres of the east side, about 1200 feet long north and south and 300 feet wide east and west,—and without the consent of plaintiff removed therefrom, and converted to their own use, earth and gravel and timber of the value of $2,000. He prayed for judgment for possession of the strip of land and for damages.

The defendants answered denying that they unlawfully, wrongfully, etc., entered upon or trespassed upon any land belonging to the plaintiff, and denying that they carried away or converted to their own use any timber, gravel or earth belonging to the plaintiff, and denying that they, or any of them had been guilty of any of the wrongs and trespasses complained of by the plaintiff or that they were in any way liable to the plaintiff in any sum whatever as damages by reason of the allegations in plaintiff's petition. At the close of the testimony the trial judge gave a peremptory instruction in favor of plaintiff for title to and possession of the strip of land in controversy, and submitted to the jury the question only as to the amount of damages sustained by plaintiff.

After a careful anaylsis of the case as presented here by the petition and arguments of the relators, by the motion to dismiss and

.arguments of the respondents, and by the opinion of the Court of
Civil Appeals for the Sixth Supreme Judicial District, we have con-
cluded that the case as made before the trial court became, and is,
a case of boundary under Article 1591, R. S. 1911. Said Article
1591, R. S. 1911, makes the judgments of the Courts of Civil Appeals
conclusive in "all cases of boundary." This provision of said article
has been construed by this Court in a number of cases.

In the case of Cox v. Finks, 91 Texas, 318, 43 S. W., 1, Judge
Gaines in discussing what is a "case of boundary" said:

"It was held in effect in Schley v. Blum (85 Texas, 551 that the
right of the case must depend upon a question of boundary; and we
think we may here add to that holding by saying that the right of
the whole case must so depend. So also the case cited is very distinct
authority for the proposition that it is not necessary, in order
to make a boundary suit, that the action should be brought avowedly
to settle the true location of the dividing line between two con-
tiguous surveys. It seems to us that the decision of the
question whether a suit is or is not one of the boundary merely, de-
pends upon the answer to the further question: If there had been no
question of boundary, would there have been any case? If so, it is
not a boundary case. If not, it is a case of boundary pure and
simple. In other words, the whole litigation must grow out of a
question of boundary." He concludes that opinion by saying:
"Every issue in the case and in the whole case involves the determ-
ination of that question of boundary."

These principles enunciated by Judge Gaines have never been
overruled or modified by this Court, and are thought to be perfectly
sound and correct as to the jurisdiction of this Court where the
question of boundary is involved. The test of the question then as
applied to the present case is: Whether every issue in this case and
in the whole case is involved in the determination of the question
of boundary.

The testimony on the question of conversion of timber, gravel,
earth, and quantity of same and amount of damages, is not given
in this record; but the Court of Civil Appeals in its opinion in this
case says:

"It is not denied in the testimony that the appellants did enter
upon and commit the acts referred to upon land in that immediate
vicinity, and did remove gravel and timber therefrom, but they put
the appellee upon proof of the fact that those depredations were
committed on the land described in his petition. The controversy,
though not by the pleadings made a boundary suit really assumed
the form of a dispute over the location of the east boundary line of
the appellee's land; the evidence showing that the appellants, or
some of them, claimed the land adjoining this on the east. If the

east boundary line is where the appellee claims it is, the appellants committed their depredations on his land and are liable for damages; but if this line is where the appellants claim it should be, they were not guilty of trespassing upon the appellee's premises. It will be observed that the appellee's field notes call for the west boundary line of Section 3 as his east boundary line."

In its opinion on rehearing the Court of Civil Appeals says:

"In this appeal there is practically but one question involved— that is, were the depredations complained of by the appellee committed on his land? If they were, the damages awarded should be sustained. If they were not, the judgment of the trial court should be reversed. As stated in the original opinion the *main* question can be answered by determining the true location on the ground of the west boundary of Section 3."

The respondent Burke in his motion to dismiss relators' petition and in his arguments nowhere raises any question as to the correctness of the finding of fact by the Court of Civil Appeals, and refers to no facts whatever that would indicate that there was any issue of fact made in the trial court as to the fact of conversion; but the entire record shows that the issue below was made on the location of the west boundary line of Section No. 3, which would be the east boundary line of the Burke Survey. Respondent Burke attaches to his motion to dismiss relators' petition, copies of all the pleadings in the case, the charge and judgment of the trial court, and the opinion of the Court of Civil Appeals; but he nowhere contends that there was an issue of fact upon the question of conversion, and the only issue submitted to the jury was the amount of damage caused by the conversion, the court having by its peremptory charge instructed the jury that the strip of land was within the boundary of respondent Burke's survey.

The case as developed before the trial court determines its character, and not the allegations of the parties in their pleadings alone. In the case of West Lumber Co. v. Goodrich, 223 S. W., 186, the court says:

"The test of jurisdiction is the character of the case. If all the issues converge in the establishment of boundaries, so that the right of the whole case depends thereon, and but for the question of the disputed boundary line there would be no case, the case is one of boundary, and the Supreme Court without jurisdiction."

Also in that case, which was held not to be a case of boundary, Chief Justice Phillips says:

"If the right of that part of the case comprised by the action for conversion depended wholly upon an adjudication of the location of the disputed boundary line, a different question would be presented. Ordinarily, in actions of trepass to try title—a common form of action for the settlement of boundary disputes—

there is a formal prayer for damages for the alleged wrongful tres-
pass and possession. In such cases the adjudication of the title
of itself determines the right to such damages. For this reason,
combining a prayer for such damages in a trespass to try title action
which, in truth, was but a boundary line dispute, would not render a
case thus presented any the less a boundary case.''

It appearing in the present case that there is really no controverted
issue as to the fact of conversion, and that issue, along with the
extent of conversion and value of property converted, depends
wholly upon the rights of the contending parties to the strip of
land in controversy, the conclusion is unavoidable that every issue
in the case and in the whole case depends upon the determination of
the question of boundary.

Having determined that this is a case of boundary, and therefore
within the final jurisdiction of the Court of Civil Appeals, the fur-
ther question arises as to whether or not the holding of the Court
of Civil Appeals on the question of boundary is in conflict with opin-
ions of other Courts of Civil Appeals set out in relators' petition.
If there is such a conflict, the relators are entitled to the award of
mandamus as prayed for.

The facts as set out in relators' petition and as shown in the
opinion of the Court of Civil Appeals are substantially as follows:

The original field notes of Section 3 are as follows:

''In Bowie County on the waters of Day's Creek, a tributary of
Sulphur River, about 21 miles N 81 E of Boston, known as survey No.
3, by virtue of Land Scrip No 348, issued by the Comr. of Claims
December 4th, 1860, in accordance with an act to incorporate said
company, approved February 4th, 1856, and transferred by the
President of said company to said Wright, February—1861. Begin-
ning at a stake the N E corner of section No. 4 on the state line,
whence a pine brs S 36 W 9 vrs a P O brs N 47 W 12-½ vrs; thence
north 1200 vrs W. Oldham's S E corner a stake whence a pine brs S
22 West 15 vrs do brs S 67 W 7 vrs; thence west 1900 vrs W
Oldham's S W corner a stake whence a R O brs S 30 E 10 vrs, and a
pine brs S 44 W 19 vrs; thence north 642 vrs the S E corner of A. J.
King's survey a stake whence a hickory brs S 80 W 26 vrs a pine brs
S 30 W 6 vrs; thence west 572 vrs a stake on the S B line of A. J.
King's survey whence a pine brs N 33 E 8 vrs do brs South 50 E 13
vrs; thence south 2196 vrs a stake on the N B line of W. W. Wooten's
survey a stake whence a pine brs S 25 W 5 vrs do brs N 37 W 9 vrs;
thence east 791 vrs W. W. Wooten's N E corner stake, whence a
black jack brs S 37 E 8 vrs a pine brs S 21 E 10 vrs; thence N 354
vrs the N W cor. of section No. 4 a stake whence a pine brs S 36 W
10 vrs do brs S 50 E 13 vrs; thence east 1681 vrs to the beginning bear-
ings marked R.''

The C. C. Burke Survey lay immediately west of Section No. 3, and according to the description contained in its patent, its east boundary line is the west boundary line of Section No. 3, Section No. 3 being the senior survey.

Relators, defendants in the trial court, introduced a number of witnesses to the effect that there was an old line running north and south just a few varas east of a fence enclosing Burke's tract, evidenced by blazes and hacks on trees; that in this line only a few places is there now standing any timber; that this old line was reputed to be the west boundary line of Section No. 3; that this old line is several varas west of a point reached by measurement of course and distance from the east boundary line of Section No 3, but the northwest and southwest corners of Section No. 3, called for in the patent to Section No. 3, cannot now be located on the ground, as the stakes and bearing trees have disappeared; that the W. H. Ector tract, which lies immediately south of the Burke tract, also lies west of the southern portion of Section No. 3, and its east boundary line is the west boundary line of that portion of Section No. 3 beginning at an established corner on the north boundary line of the W. W. Wooten survey, and that this line between the Ector survey and that part of Section No. 3, if extended north, would correspond to the old blazed line, and that this old blazed line is in accord with an extension of said east boundary line of the Ector tract.

It is the extension of this Ector line to the north and the old blazed line that relators claim is the true west boundry line of Section No. 3; and respondent Burke asserts that the true west boundary line of Section No. 3; should be located according to the calls for and distance in its patent, because of the fact that the northwest and southwest corners of said section are not now to be found on the ground, and the west line being uncertain, it should be located by the calls for course and distance.

In following the field notes of Section 3, it is observed that the N. W. and S. W. corners of Section 3 were definitely marked by the surveyor, but the stakes and bearing trees according to the testimony are not now to be found, and the exact locations of these corners are not now ascertainable by them. But it is apparent the survey was actually surveyed, and the west boundary line between these corners as described in the patent was run on the ground by the surveyor, and probably marked by him.

By course and distance called for in the patent, the west boundary line of section 3 would be 2472 varas west of its eastern boundary on the state line. The Court of Civil Appeals in its opinion says:

"In the absence of some established memorials which can be relied on as marking the location of that line on the ground, the original survey can be ascertained only by measuring from the state line, a recognized boundary about which there appears to be no dispute.

This measurement was made by a surveyor who testified on the trial, and, according to his evidence, the land upon which were committed the depredations complained of lies west of that line and within the limits described as the appellee's land. The correctness of these measurements is not disputed by any other testimony.''·

It further says:

''There was testimony, however, tending to show the existence of an old marked line farther west than where the measurements made by this surveyor located the west boundary line of Section 3. It is here that the appellants claim the true location of that line to be. . . . . . There is no evidence as to who marked that line or when it was done, except that it appeared to be an old survey.''

Notwithstanding the ·Court of Civil Appeals says there was evidence tending to show the existence of an old marked line,—that there was no evidence as to who marked that line or when, except that it appeared to be old,—yet it in effect holds that the calls for course and distance in the patent to Section 3, the senior survey, should prevail over this old marked line, saying:

''The evidence relied upon to indicate that the original line had been located upon the ground at a different point is too unreliable to displace a line which can be located with accuracy by course and distance. Course and distance will prevail in every instance, except where shown to be in conflict with the survey as actually made. The Court committed no error in giving the charge he did in directing that the appellee was entitled to the possession and such damages as he sustained to the land sued for.''

In attempting to apply the rule that course and distance will prevail except where shown to be in conflict with the survey as actually made, it denied the application of the exception to the locating of the west boundary line of Section 3, the senior survey, even though there was evidence tending to show the existence of an old line west of a point to which course and distance would reach. It was the location of this west boundary line of Section 3 ρon which the determination of the case turned and upon which a peremptory charge was given by the trial court and sustained by the Court of Civil Appeals.

In its opinion on rehearing the Court of Civil Appeals says:

''To locate the west boundary line of Section 3 at the point where the appellee claims it should be, conforms exactly with the field notes contained in the patent. To locate it at the point where the appellants claim it should be, would extend the north and south boundary lines of the survey from 60 to 109 varas beyond the distance called for in the patent, and thus contradict the written description.

''If the legal effect of the evidence relied on by the appellants was to identify a location called for by the natural or artificial objects

referred to by the surveyor in his field notes, the fact that it conflicted with the calls for course and distance would be immaterial. But under the facts of this case it can be used for only one purpose —that is, as proof that this old line is the one actually traced by the surveyor. This, in legal effect, contradicts the only description in the patent by which that boundary can now be located. Under the rule laid down in the authorities referred to such evidence can not be considered. In a suit of this character a boundary can not be established by showing that the actual survey was made at a point different from that called for in the patent. In searching for the footsteps of the surveyor the parties must be guided by his written description of the lines he traced."

In Thacker v. Wilson, 122 S. W., 938, (4th District) the issue as, between those parties was the location of a boundary line, and the trial court peremptorily instructed a verdict for Wilson, the plaintiff. In stating the case that Court of Civil Appeals said:

"It is not disputed that the plaintiffs showed a chain of title to Lot 3 from the sovereignty of the soil down to themselves. The contention of Thacker is that the tract in controversy is no part of Lot 3, but is a part of Lot 5, owned by him. If there was any evidence reasonably tending to support this theory, the court should have submitted as an issue to be determined by the jury the question as to which of the two lots the land in controversy is a part; it evidently being a part of one or the other. The evidence shows that the west half of the league was subdivided by Henry Trott, a surveyor, under the direction of James F. Perry, the executor of Stephen F. Austin, in 1838."

Then the court, in speaking of the evidence and in holding that the issue as to the true location of the line should have been submitted to the jury, said:

"Until the length of the east and west boundary lines of lot 3 are ascertained, its south boundary line, which is the north boundary line of Lot 5, cannot be determined, unless the evidence shows, or tends to show, that it was actually run by Trott when he subdivided the land, so his footsteps may be traced when it was run. The plat carried upon its face intrinsic evidence that the land was actually surveyed when it was divided into lots. Old lines, bearing such evidence of antiquity as to be consistent with the fact that they were made by the surveyor when he subdivided the land, corresponding in course and distance to boundary lines indicated by the plat, are found along the ground. It is not directly shown by whom these lines were made, but we think the circumstances sufficiently tend to show that they were made by Trott as to require the issue as to whether they were made by him when he subdivided the land to be submitted to the jury. Among these old lines there is evidence of one extending from the southeast corner of Lot 4, which is the northeast

corner of Lot 6, at which stands a black gum tree marked 'XO,' to the east line of the west half o⁰ the Luke Moore league. If this line was run by Trott when he subdivided the land, and is the one shown by his plat of the subdivision, then it would seem that it is the south boundary line of Lot 3 and the north boundary line of Lot 5. The evidence tends to show that this line is taken by surveyors, and regarded by persons living in the vicinity as the Trott line. If it is, in fact, such line, then, as shown by the plat attached, the 3.86 acres in controversy lies in Lot 5, as is claimed by Thacker, and not in Lot 3 which is sued for. So it is seen that an issue of fact was raised by the evidence which should have been submitted to the jury."

After a discussion of rules of evidence relating to admissibility of reputation to prove the location of a boundary line, that court concluded by saying:

"We have not considered or discussed the plaintiffs' evidence on the question as to the location of the boundary line between Lots 3 and 5, but have only considered so much of the testimony in the case as was necessary to show that the case should have been submitted to the jury upon that issue. In this connection we will observe that the burden of showing that the strip of land in controversy was a part of Lot 3 was upon the plaintiffs; and if, as the evidence indicates, the line was actually run on the ground, it was incumbent upon them to show the line actually run, and that, according to it, the land in controversy was on their lot."

In the case of Goodson v. Fitzgerald, 135 S. W., 696, (1st District) that court, in passing on a boundary case, said:

"But the fact that bearing trees were called for at the eastern end of the north boundary line and a stake at the western terminus raises the presumption that the line was actually surveyed and the corners identified by the bearing trees and stake, so that the line in question falls within the definition of a marked line. Thatcher v. Matthews, 101 Texas, 122, 105 S. W. 317; Steuoff v. Jackson, 40 Texas, Civ. App. 332, 89 S. W. 447.

"As said in Steusoff v. Jackson, 40 Texas, Civ. App. 332, 89 S. W. 447: 'We have no question but that a line marked at the beginning and the end *or* along its course comes within the definition of a marked line,' etc. In addition to the bearing trees called for at the northeast corner, it was shown by the admissible declaration of H. M. Griffith, Sr., the original grantee, where the north line of the Griffith was, and this was corroborated by evidence of marks upon trees at or near the place so pointed out by Griffith as being upon his north line, and further corroborated by evidence of general reputation covering a long period of time. From all this we conclude that the north line of the Griffith at the time the survey of the Welch was made was a marked and known line."

Then the court says:

"But appellant by his second proposition under the first assignment contends that lines and boundaries cannot be construed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor when there are no calls in the grant for such objects. In other words, as applied to the facts of this case, evidence of the existence of marked north boundary line of the Griffith may not be looked to as establishing a marked line, so as to make the call of the west line of the Welch for that boundary of controlling force over the call for course and distance, unless the objects which furnish such evidence are called for in the grant. We do not understand this to be the law. In Maddox v. Fenner, 79 Texas, 291, 15 S. W., 237, the rule is stated that when unmarked lines of adjacent surveys are called for, and when such lines can be ascertained with accuracy, and when in the absence of all evidence as to how the survey was actually made there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, no good reason is seen why the survey should not be given the dignity of an artificial object and prevail over course and distance. If this be true with reference to an unmarked line, it certainly should apply to a line which the evidence strongly shows, and which we find, was marked at the time the survey was made."

In Titterington v. Kirby, 47 Texas Civ. App., 595, 106 S. W., 899, (2nd District) the plaintiff's right to recover depended upon the location of the west boundary line of the Payne survey. That court, in stating the case and its decision, says:

"The field notes of this survey contain erroneous and contradictory calls, particularly the calls for its southwest corner, in that the southeast corner of the Jesse Starkey and the northeast corner of the H. H. Hall survey, also an old survey, are called for as a common point; whereas, the southeast corner of the Jesse Starkey is west of the northeast corner of the Hall, the width of the strip of land in controversy, both of these corners being still well marked by objects found on the ground. There was also evidence of marked lines running north from each of these corners. If the south line of the Payne be extended to the southeast corner of the Starkey, there would be a slight excess in the quantity of land called for in the Payne, and, if controlling effect be given to the call for the northeast corner of the Hall, a slight deficiency results; the deficiency, however, being considerably greater than the excess. In submitting the case to the jury, the court in a charge reviewing the evidence at considerable length reached the conclusion that the western boundary of the Payne should be established by the call for the southeast corner of the Starkey, rather than by the conflicting call for the northeast corner of the Hall, and instructed the jury to re-

turn a verdict accordingly, on which the judgment appealed from was entered.

"It seems clear to us, however, that even on the facts recited in this charge appellant was entitled to have the jury in the first instance determine the issue. This conclusion involves a consideration of numerous circumstances; but in view of another trial, we abstain from a discussion of the relative importance and weight of these circumstances. The matter to be ascertained from the sketch and field notes of the locating surveyor, read .in the light of all other relevant facts and circumstances in evidence was: Where did he intend to place the western boundary of the Payne survey? That, in view of the conflicting calls and other elements of uncertainty, was clearly an issue of fact, and, however cogent may be the reasons for the view entertained by the trial court as set forth in the charge, we are unable to say that the circumstances to the contrary were entitled to no weight whatever."

We think the opinion of the Court of Civil Appeals in this case is clearly in conflict with the above mentioned cases. Therefore the writ is awarded.