**INTERNATIONAL–GREAT NORTHERN R. CO. v. MALLARD.     (No. 2903.)**

(Court of Civil Appeals of Texas. Texarkana. May 8, 1924. Rehearing Denied May 29, 1924.)

1. **Railroads** ⬅➡324(3)—**Automobile driver violating statute guilty of contributory negligence.**

One driving an automobile faster than 6 miles per hour, over obscured railroad crossing, in violation of Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*, is guilty of contributory negligence, barring recovery for injuries.

2. **Statutes** ⬅➡241(1)—**Penal statute as bearing on contributory negligence construed as applied in criminal prosecution.**

In construing a criminal statute as bearing on contributory negligence in a civil action, court should adopt the rule of construction applicable in criminal prosecutions.

3. **Railroads** ⬅➡324(3)—**"Crossing" defined.**

"Crossing" as used in Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*, penalizing motorists failing to slow down to 6 miles per hour when approaching obscured "crossing," means that portion of the right of way covered by inter-

section with street or highway; any broader definition being too indefinite.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Crossing.]

**4. Railroads ⟐327(11)—Negligent speed of automobile driver depends on common prudence.**

In absence of statute, whether an automobile driver is guilty of contributory negligence in approaching a railroad crossing faster than 6 miles per hour, depends on his violation of the rules of common prudence.

### On Motion for Rehearing.

**5. Courts ⟐247(7)—Case not certified to Supreme Court, where decision of Court of Civil Appeals not final.**

A case which can be carried to the Supreme Court on writ of error, or in which the decision of the Court of Civil Appeals is not final, should not be certified.

Appeal from District Court, Anderson County; W. R. Bishop, Judge.

Action by W. E. Mallard against the International-Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Morris, Sewell & Morris, of Houston, for appellant.

Seagler & Pickett, of Palestine, and R. L. Seagler, of San Antonio, for appellee.

HODGES, J. In October, 1920, the appellee was injured in a collision with a locomotive on what was then known as the International & Great Northern Railway. The proof shows that the injury occurred in the city of Palestine, at a point where Reagan street crosses the railway track. The appellee was riding in an automobile going west, and the engine with which he collided was going north. As a reason for not discovering the approach of the engine, the appellee pleaded and proved that weeds had been negligently permitted to grow along the right of way, so that a train could not be seen coming from that direction. In a trial before a jury the plaintiff recovered a judgment for the sum of $1,375, the greater portion of which was for the value of the automobile destroyed.

At the time the injury occurred the railway property was in the hands of James A. Baker as receiver, appointed by the United States District Court for the Southern District of Texas. That receivership terminated in a sale of the property in July, 1922, and in August following the sale was confirmed in an order which reserved jurisdiction in the federal court for certain specified purposes not necessary here to mention. After the sale the purchasers filed with the secretary of state a written instrument, as required by article 6624 of the Revised Civil Statutes, agreeing to hold the property "subject to liability for personal injuries inflicted during the receivership," etc. Some time after the sale the name of the corporation was changed to International-Great Northern Railroad Company, which is the appellant in this suit. The appellee filed his suit against the receiver, and it was pending at the time of the sale.

Appellant presents three grounds for the reversal of the judgment: (1) That the state court was without jurisdiction because of the reservations made in the decree confirming the sale of the property; (2) that article 6624 of the Revised Civil Statutes and the written agreement filed thereunder are not applicable to this case, because the liability occurred during a receivership which resulted in a sale of the property; (3) that the evidence shows conclusively that the appellee was guilty of contributory negligence in running his car at a greater rate of speed than 6 miles per hour when within less than 30 feet of the crossing.

The first two grounds are based upon propositions of law which were discussed in the case of I.-G. N. R. Co. v. Oehler, 262 S. W. 785, this day decided by this court. The facts here presented raising those questions are not legally different from those involved in the Oehler Case, with perhaps this exception, in this case the suit was filed before the receiver was discharged, whereas in the Oehler Case suit was not filed until after the receiver was discharged. The similarity of the facts is such that it is unnecessary to here repeat the discussion of those legal questions. We therefore overrule the objections embraced in the first and second propositions, for the reasons stated in the case of I.-G. N. R. Co. v. Oehler. H. & T. C. Ry. v. City of Ennis (Tex. Civ. App.) 201 S. W. 256.

[1] The defense of contributory negligence is based upon the contention that the appellee failed to comply with the provisions of article 820*l* of Vernon's Ann. Penal Code Supp. 1918, which is as follows:

"Any person driving a motor vehicle or motorcycle, when approaching the intersection of a public street or highway with the tracks of a steam railroad or interurban railroad, where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said crossing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle or motorcycle to a speed not to exceed six miles per hour before making the said crossing, unless there are flagmen or gates at such crossing and such flagmen or gates show that the way is clear and safe to cross such track or tracks, and provided further that the provision of this section shall not apply to persons crossing interurban or street railway tracks within the lim-

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

its of incorporated cities or towns within the state."

The penalty for violating this article is a fine of not less than $10 nor more than $200.

It may be said that it conclusively appears from the evidence in this case that the appellee was traveling at a greater rate of speed than 6 miles per hour when within less than 30 feet of the crossing over the railway track. If the statute is applicable to the physical conditions there existing—that is, if the crossing was either wholly or partially obscured—he was guilty of such contributory negligence as would defeat his right to recover the damages sued for. The facts relied upon to show that the crossing was wholly or partially obscured are found in the testimony of the appellee himself. He stated that the view of the railway track on the south side of the highway was obscured by a dense growth of tall weeds and by a large wooden signboard. The street, he said, was 30 or 40 feet wide, but the crossing itself was in plain view. There were no intervening obstructions which in any manner obscured it. No other witness testified to the contrary regarding the view of the crossing.

The question then is, Was this crossing "wholly or partially obscured" within the meaning of article 820l quoted above? The construction of that article has been involved in four cases decided by our Courts of Civil Appeals. In T. & N. O. Ry. Co. v. Harrington, 209 S. W. 685, decided by the Court of Civil Appeals of the Ninth District, and in S. A. & A. P. Ry Co. v. Singletary, 251 S. W. 325, decided by the Court of Civil Appeals of the Fourth District, it was held that the word "crossing" used in that statute extends beyond the limits of the highways where it intersects the railway track, and includes such a portion of the track on each side of the intersection as is reasonably necessary to enable one about to cross the track to observe approaching trains. In Schaff v. Bearden, 211 S. W. 503, the Court of Civil Appeals for the Fifth District limited the word "crossing" to the space covered by the intersection of the railway right of way and the street. In Graham v. Hines, 240 S. W. 1015, the court of Civil Appeals of the First District agreed with the decision last referred to, and goes further, holding that the statute is properly invalid because of uncertainty. As supporting that conclusion, the court refers to Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494. The Supreme Court granted a writ of error and reversed the judgment of the Court of Civil Appeals in the Harrington Case, but declined to express an opinion as to the proper construction of that article of the statute. See Railway Co. v. Harrington

(Tex. Com. App.) 235 S. W. 188. So far as we know, the Court of Criminal Appeals has never construed that statute nor passed upon its validity. In that state of the decisions we feel free to adopt our own construction of the article.

[2, 3] Although this is a civil proceeding, we must adopt the same rule of construction that should be applied if this were a criminal prosecution. In other words, if the appellee were being prosecuted for violating the highway law, of which this article is a part, could he be convicted and punished for unlawfully approaching a railway crossing that was "wholly or partially obscured?" That, of course, would depend upon the meaning that should be given to the word "crossing." If this should be limited to that portion of the railway right of way covered by the intersecting street, then clearly there could be no conviction, because this territory was not obscured. On the other hand, if the term "crossing" includes a portion of the railway right of way lying beyond the limits of the street intersection, then there might be a conviction, because a portion of that was obscured.

The word "crossing" is used a number of times in our statute. Article 6485, Revised Civil Statutes, authorizes railway corporations to construct their roads across any street, highway, plank road, or turnpike which the railway may intersect or touch. It requires such corporations, however, to restore such street, highway, plank road, or turnpike thus intersected to its former state, or such state as not to unnecessarily impair its usefulness, and to keep such "crossing" in repair. Article 6486 provides that railway corporations which fence their right of way may be required to make "openings, or crossings, through their fence and over their roadbed along their right of way every one and one-half miles." Article 6487 provides that such "crossings" shall not be less than 30 feet in width, and shall be made and kept in such condition as to admit of the free and easy passage of horses, cattle, sheep, hogs and other domesticated animals, wagons, and other vehicles. Article 6488 provides that such "crossings" shall be made at such times and places as may be demanded by any two or more citizens of the state who either live or own land within 5 miles of the place where such "crossings" may be demanded. Passing over intervening articles which provide the conditions under which repairs must be made, article 6493 is as follows:

"Nothing in this chapter shall be so construed as to affect the law requiring railroad companies to provide proper crossings at intersection of all roads and streets."

Article 6494 says:

"It shall be the duty of every railroad company in this state to place and keep that por-

tion of its roadbed and right of way over or across which any public county road may run, in proper condition for the use of the traveling public," etc.

Article 6563 requires railroad corporations to erect at all points where its right of way shall cross any first or second class public road, at a sufficient elevation from such public road to admit of the free passage of vehicles of every kind, a sign with large and distinct letters placed thereon, to give notice of the proximity of the railroad and to warn persons of the necessity of looking out for cars, etc. Article 6564 requires railroad companies to place on each locomotive engine a whistle and a bell, and further provides that this whistle shall be blown and the bell rung at a distance of at least 80 rods from where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road or street. In all these statutes the word "crossing" seems to have a definite meaning and to refer to that portion of the railway right of way occupied by any intersecting street or highway. In inclosing a right of way, railway companies must put cattle guards on each side of the "crossings." These cattle guards, when properly located, mark the lateral boundaries of the crossing. When a traveler gets upon the right of way outside of those limits he becomes a trespasser because he is not on the crossing.

Article 9 of the Penal Code says:

"This Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law."

In applying this rule of construction to statutes carrying civil penalties, our civil courts hold that—

"Penal statutes must be strictly construed in determining the liability of the person upon whom the penalty is imposed, and that the more severe the penalty, and the more disastrous the consequences to the persons subjected to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such person and against the enforcement of such law." M., K. & T. Ry. Co. v. State, 100 Tex. 420, 100 S. W. 766; Houston E. & W. T. Ry. Co. v. Campbell, 91 Tex. 551, 45 S. W. 2, 43 L. R. A. 225; Schloss v. A., T. & S. F. Ry. Co., 85 Tex. 601, 22 S. W. 1014.

In the second case cited above the court said:

"It results as a corollary from this rule that the penalty will not be awarded in a case which does not come strictly within the terms of the statute. Such is the established canon of construction in this court."

In the last case cited the court said:

"There is no ambiguity in the act, and its meaning must be determined by its own language. There is no room for construction, and no need to resort to extraneous facts for its interpretation."

In Sparks v. State, 76 Tex. Cr. R. 263, 174 S. W. 351, the Court of Criminal Appeals uses this language:

"If the language of a statute is plain and unambiguous, there is no room for construction. That it is only in cases where the meaning of the statute is doubtful that the courts are authorized to indulge in conjecture as to the intention of the Legislature, or to look to consequences in the construction of the law. Where the meaning of the words used is plain, the act must be carried into effect according to its language, or the courts will be assuming legislative authority—[citing numerous cases decided by the courts of this state and of other states]."

Continuing, the court quotes approvingly the following from Black on the Interpretation of Laws:

" 'If the precise words used are plain and unambiguous, we are bound to construe them in their ordinary sense, even though it does lead to an absurdity or manifest injustice. Words may be modified or varied where their import is doubtful or obscure, but we assume the functions of legislators when we depart from the ordinary meaning of the precise words used, merely because we see, or fancy we see, an absurdity or manifest injustice from an adherence to their literal meaning.' Even if the court is fully persuaded that the Legislature really meant and intended something entirely different from what it actually enacted, and that the failure to convey the real meaning was due to inadvertence or mistake in the use of language, yet, if the words chosen by the Legislature are not obscure or ambiguous, but have a precise and sensible meaning, then the court must take the law as it finds it, and give it its literal interpretation, without being influenced by the probable legislative meaning lying back of the words. In that event, the presumption that the Legislature meant what it said, though it be contrary to the evident fact, is conclusive."

If the word "crossing" be enlarged so as to include a portion of the railway right of way lying outside of the street intersection, then where does the crossing end? How much of the railway right of way should be called a "crossing"? Such a use of the word would make its meaning so indefinite as to render this article of the statute void for uncertainty. Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494. We are of the opinion that the word "crossing," as used in this statute, means that portion of the railway right of way covered by the intersection of the street or highway. Beyond those limits the railway corporation has the exclusive

use of its property; within those limits travelers have an equal, if not superior, right. This, we think, is giving to the word "crossing" its plain, if not its universal, signification. To broaden it beyond that commonly accepted meaning would violate every established canon for the construction of penal statutes.

We therefore conclude that under the undisputed. evidence in this case the crossing was not obscured, and that the statute invoked has no application.

[4] One may be guilty of contributory negligence in approaching an "unobscured crossing" at a greater rate of speed than 6 miles per hour. But the conviction would rest upon the conclusion that he violated the laws of common prudence, not because he violated a penal statute. In this case the issue of contributory negligence was submitted and determined in appellee's favor.

The judgment will be affirmed.

### On Motion for Rehearing.

In this case, as in the case of I.-G. N. R. Co. v. Oehler, 262 S. W. 785, this day, disposed of, complaint is made of the form of the judgment rendered. The motion for rehearing will be overruled for the reasons stated in the discussion of a similar motion in that case.

[5] Appellant also calls attention to the conflict between the holding of this court and other Courts of Civil Appeals in construing article 820l of Vernon's Ann. Penal Code Supp. 1918, and asks that the question be certified to the Supreme Court. Since this is a case in which the jurisdiction of this court is not final, there is no occasion for certifying. The question can be taken before the Supreme Court on writ of error. Braumiller v. Burke, 111 Tex. 145, 230 S. W. 400; Fruit Dispatch Co. v. Rainey et al., 111 Tex. 266, 232 S. W. 281.

The motions are overruled.