IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,522






BRYAN ERIC WOLFE, Appellant



v.



THE STATE OF TEXAS






ON APPEAL FROM ORDER OF DNA TESTING 

FROM THE 209TH JUDICIAL DISTRICT COURT OF 

HARRIS COUNTY, TEXAS





 Keasler, J., filed this concurring opinion.


O P I N I O N 



 The majority concedes that this statute is unambiguous, but it nevertheless proceeds to
examine the legislative history "in order to highlight the harmony between the legislative
intent and [its] holding." (1) I vigorously oppose this unnecessary excursion.

 We made clear in Boykin v. State (2) that 

 [w]hen attempting to discern this collective legislative intent or purpose, we
necessarily focus our attention on the literal text of the statute in question and
attempt to discern the fair, objective meaning of that text at the time of its
enactment. We do this because the text of the statute is the law in the sense that
it is the only thing actually adopted by the legislators, probably through
compromise, and submitted to the Governor for her signature. We focus on the
literal text also because the text is the only definitive evidence of what the
legislators (and perhaps the Governor) had in mind when the statute was enacted
into law. There really is no other certain method for determining the collective
legislative intent or purpose at some point in the past, even assuming a single
intent or purpose was dominant at the time of enactment. Yet a third reason for
focusing on the literal text is that the Legislature is constitutionally entitled to
expect that the Judiciary will faithfully follow the specific text that was
adopted. (3)


We continued that "[i]f the plain language of a statute would lead to absurd results, or if the
language is not plain but rather ambiguous, then and only then, out of absolute necessity, is it
constitutionally permissible for a court to consider, in arriving at a sensible interpretation,
such extratextual factors as executive or administrative interpretations of the statute or
legislative history." (4) We noted that "[t]his method of statutory interpretation is of ancient
origin and is, in fact, the only method that does not unnecessarily invade the lawmaking
province of the Legislature. The courts of this and other jurisdictions, as well as many
commentators, have long recognized and accepted this method as constitutionally and logically
compelled." (5) 

 The majority goes far beyond Boykin's boundaries and into the statute's legislative
history for no good reason. Only a few weeks ago, in Ex parte Peterson, (6) the majority quoted
my concurring opinion in Watts v. State (7) for the proposition that "[t]he prudent jurist will
typically decide cases on the narrowest, surest ground available." Alas, apparently the Court
was just kidding. What I said in Watts bears repeating today:

 Statements that are "unnecessary to the issue upon which the . . . Court . . . is writing"
are dicta. (8) Dicta include "[a]n opinion expressed by a court, but which, not being necessarily
involved in the case, lacks the force of an adjudication; an opinion expressed by a judge on a
point not necessarily arising in a case; an opinion of a judge which does not embody the
resolution or determination of the court, and made without argument, or full consideration of
the point; not the professed deliberate determination of the judge himself." (9)

 It is dangerous to include dicta in court opinions. "With neither case facts to sharpen
analysis nor help from advocates' arguments, a dictum-issuing court necessarily writes broadly
and ambiguously." (10) Additionally, "a court that employs a rule broader than the facts before
it may properly consider the rule in relation to that particular case; however, the rule's
potential bearing on all other cases will rarely be completely contemplated by the court." (11) 
Finally, "[i]t is often unwise for an appellate court to discuss issues not implicated by the facts
of the case at bar, for it is difficult to test the operational dynamics of a legal rule being
assembled in a factual vacuum." (12)

 As Chief Justice Warren has explained, "[i]t has not been the custom of the Court, in
deciding the cases which come before it, to write lengthy and abstract dissertations upon
questions which are neither presented by the record nor necessary to a proper disposition of
the issues raised." (13) He complained that the majority's opinion in that case "departed from this
custom and is in the nature of an advisory opinion, for it attempts to resolve with finality many
difficult problems which are at best only tangentially involved here." (14) 

 Given the prevalence of dicta in court opinions and the standard complaints from
dissenters, "[o]ne wonders why obiter dicta are even present." (15) One author has some theories: 

 Sometimes, they are included for reasons of contrast. Sometimes, judges appear
to be writing short essays on the law. Perhaps the judge wants the opinion
included in a case book. Perhaps he is bucking for another job. Perhaps the judge
writes well and is looking for a mode of self-expression. Perhaps he does not
write the opinions at all but leaves them to law clerks who do not know any
better, or who think they still are writing term papers. Perhaps all of these
reasons apply, and perhaps there are others as well. (16) 

 Regardless of the reasons, the urge to write beyond what is necessary in any case should
be tamed. Justice Selya of the United States Court of Appeals for the First Circuit argues that
appellate courts should strive for prudence in their opinions. "[P]rudence counsels judges not
to reach out and decide large, controversial issues in the absence of a necessity to do so. The
prudent jurist will typically decide cases on the narrowest, surest ground available, leaving
tougher calls, with broader implications, for future cases that squarely present them." (17) 

 I would hold that the statute's plain language unambiguously prevents Wolfe's appeal. 
I would follow Boykin and not go beyond that conclusion. Because the majority does not do
so, I concur only in its result.


DATE DELIVERED: November 12, 2003

PUBLISH

1. Ante, slip op. at 4.
2. 818 S.W.2d 782 (Tex. Crim. App. 1991).
3. Id. at 785.
4. Id. at 785-86.
5. Id. at 786 (citing West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83 (1991); 
Demarest v. Manspeaker, 498 U.S. 184 (1991); Public Citizen v. U.S. Dept. of Justice, 491
U.S. 440 (1989) (Kennedy, J., concurring); Caminetti v. United States, 242 U.S. 470, 485
(1917); Republicbank Dallas v. Interkal, 691 S.W.2d 605, 607 (Tex. 1985); Sparks v. State,
76 Tex. Crim. 263, 174 S.W. 351, 352 (1915); E. Crawford, The Construction of
Statutes § 164 (1940); H. Black, Handbook on the Construction and Interpretation
of the Laws §§ 24-27, 85 (1896); 2A N. Singer, Sutherland on Statutory
Construction §§ 46.01-46.07 (1984 & Supp.1991); 1 W. LaFave & A. Scott, Substantive
Criminal Law § 2.2 (1986); 82 C.J.S. Statutes § 322 (1953)). 
6. 2003 LEXIS 534 *2 n.3, __ S.W.3d __ (Tex. Crim. App. October 8, 2003).
7. 99 S.W.3d 604, 615 (Tex. Crim. App. 2003) (Keasler, J., concurring).
8. Michael Sean Quinn, Symposium on Taking Legal Argument Seriously: Argument
and Authority in Common Law Advocacy and Adjudication: An Irreducible Pluralism of
Principles, 74 Chi.-Kent L. Rev. 655, 713 (1999). 
9. Grigsby v. Reib, 105 Tex. 597, 602, 153 S.W. 1124, 1126 (1913).
10. Richard B. Cappalli, What is Authority? Creation and Use of Case Law by
Pennsylvania's Appellate Courts, 72 Temple L. Rev. 303, 310 (1999).
11. Joshua C. Dickinson, Casenote: Standing Requirements for Intervention and the
Doctrine of Legislative Standing: Will the Eighth Circuit "Stand" by Its Mistakes in
Planned Parenthood of Mid-Missouri & Eastern Kansas, Inc. V. Ehlmann?, 32 Creighton 
L. Rev. 983, 1024 (1999).
12. Evan Tsen Lee, Deconstitutionalizing Judiciability: The Example of Mootness, 105
Harv. L. Rev. 605, 649 (1992).
13. Culombe v. Connecticut, 367 U.S. 568, 635-36 (1961) (Warren, C.J., concurring). 
14. Id.
15. Quinn, 74 Chi.Kent L. Rev. at 713.
16. Id.
17. Hon. Bruce M. Selya, Essay: Thoughts from the Bench: The Confidence Game:
Public Perceptions of the Judiciary, 30 New Eng. L. Rev. 909, 916 (1996).